UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
:
FREDDY FERNANDEZ, LUIS VELASQUEZ, :
and GIOVANNY GONZALEZ, on behalf of themselves :
and all others similarly situated, :
:
Plaintiffs, :
: 13-CV-4938 (ARR) (SMG)
 -against- :
:
KINRAY, INC., CARDINAL HEALTH, INC., : OPINION AND ORDER
STEWART RAHR, Individually and as Chief Executive :
Officer of Kinray, Inc., HOWARD HIRSCH, Individually :
and as Chief Financial Officer of Kinray, Inc., :
WILLIAM BODINGER, Individually and as Senior Vice :
President and General Manager of Kinray a Cardinal :
Health Company, and KERRY CLARK, Individually :
and as Chief Executive Officer of Cardinal Health, Inc., :
:
Defendants. :
:
-------------------------------------------------------------------- X
ROSS, United States District Judge:

This case comes before the court as a putative collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and putative class action pursuant to New York Labor Law ("NYLL") §§ 191, 193. The three named plaintiffs bring the action on behalf of themselves and all similarly situated current and former delivery drivers for defendant corporations Kinray, Inc., and Cardinal Health, Inc. Compl., Dkt. #1, ¶¶ 2-3.[1] Plaintiffs allege that they were employees within the meaning of the FLSA and NYLL but that defendants misclassified them as independent contractors. Id. ¶¶ 4, 54. Plaintiffs allege that defendants failed to pay them overtime compensation and improperly took deductions from plaintiffs' wages for equipment, insurance, and other expenses. Id. ¶¶ 5-6, 54, 56. Through this action, plaintiffs

---

[1] The complaint states that Cardinal Health purchased Kinray on December 21, 2010. Therefore, plaintiffs contend that Kinray was an employer of plaintiffs within the meaning of the FLSA until December 21, 2010, and Cardinal Health was an employer of plaintiffs within the meaning of the FLSA after that date. Compl. ¶¶ 12-18.

1

seek unpaid compensation, liquidated damages, and attorneys' fees and costs. Id. ¶ 7.

Defendant Kinray asserts a counterclaim against two of the named plaintiffs and a number of the opt-in plaintiffs. Am. Answer & Countercl., Dkt. #103.[2] The counterclaim asserts that each of these plaintiffs signed an "Independent Contractor Agreement" ("Agreement") in which they agreed to indemnify Kinray against claims, suits, or damages, including legal fees. Id. at 20-21. Kinray asserts that it has incurred, and will incur, attorneys' fees in defending against this suit. Id. at 21. If the court finds that the Agreement is enforceable and that plaintiffs were properly classified as independent contractors, Kinray seeks "a judgment enforcing the indemnification provision and other terms of the Agreement, including an award of all costs and expenses, including reasonable attorney's fees, incurred by Kinray in defending against the Complaint." Id. at 21.[3]

Now before the court is plaintiffs' motion to dismiss defendant Kinray's counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. #155. For the reasons set forth below, plaintiffs' motion is granted.

---

[2] Kinray asserts the counterclaim against named plaintiffs Giovanny Gonzalez and Luis Velasquez and opt-in plaintiffs Roberto Amaya, Luis H. Arboledo, Nevil Bazurto, Ligia Becerra, Ramon Buitrago, Roberto Calero, Arturo Coello, Gerardo Correa, Donald Cruz, Santiago Escobar, Ruben Espinoza, Carlos Fernandez, Cesar Fernandez, Alexis Franco, Henry Garcia, Jessica Gia, Carlos Gomez, Victor Gomez, Alejandro Huidobro, Perry Hutchins, Martha Latorre, Juan Daniel Lopez, Maria Lopez, Fred Martinez, Jorge Mena, Fabian Mendoza, Wilson Mejia, Pompeyo Moreno, Javier Munoz, Luis Navarrete, Myriam Paredes, Martha Pena, Maximino Pique, Marcos Posada, Eduardo Renteria, Hugo Reyes, Jose Robalino, Edgar Rodriguez, Maria Elena Romero, Carlos San Martin, Amin Sanchez, Angelo Sanchez, Carlos Santamario, Cristian Solorzano, Juver Solorzano, Kevin Tafur-Gonzalez, Feliciano Tello, Mario Tello, Miguel Torres, Freddy Vazquez, Jorge Vergara, Rigoberto Villalvir, Edwin Villamarin, and Lucy Villamarin.

[3] The parties have stipulated to the dismissal of all claims against the individual defendants. Dkt. #147, #168. The remaining defendants Cardinal Health and Kinray are represented by the same counsel. The Amended Answer and Counterclaim is filed only on behalf of Kinray, Dkt. #103, but the opposition to plaintiffs' motion to dismiss is filed on behalf of both Cardinal Health and Kinray, Dkt. #161. For the purposes of the pending motion to dismiss, the court will refer to Cardinal and Kinray collectively as "defendants."

**STANDARD OF REVIEW**

To survive a motion to dismiss under Rule 12(b)(6), the counterclaim must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The court must accept all factual allegations in the pleadings as true and draw all reasonable inferences in favor of the non-moving party. Id. at 555-56; Freedom Holdings, Inc. v. Spitzer, 363 F.3d 149, 151 (2d Cir. 2004). Courts are "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**DISCUSSION**

Plaintiffs assert four arguments in support of their motion to dismiss defendant Kinray's counterclaim: (1) the pleadings fail to state a claim with sufficient factual specificity, particularly with regard to the losses incurred; (2) the indemnification provision at issue does not apply to attorneys' fees arising out of this action; (3) applying the indemnification provision to the attorneys' fees in this case would be contrary to public policy and to the intent of the FLSA; and (4) the indemnification provision is unenforceable under New York law because a defendant cannot seek to indemnify itself against allegations of its own intentional conduct. Pls. Mem. of Law in Supp. of Mot. to Dismiss ("Pls. Mem."), Dkt. #156.

Having reviewed the parties' submissions, I find that the counterclaim fails to state a claim upon which relief can be granted because the indemnification provision cannot be read to require plaintiffs to indemnify defendants' attorneys' fees in this action. This interpretation of the

provision is consistent with principles of New York contract law, with persuasive cases from other jurisdictions, and with the remedial purposes of the FLSA and NYLL.

**I.      Construction of Indemnification Provisions Under New York Contract Law**

New York law governs the interpretation of the Agreement. Am. Answer & Countercl., Ex. 1, ¶ 21. Under New York law, "[t]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." In re Delta Airlines, 608 F.3d 139, 146 (2d Cir. 2010) (alteration in original) (quoting Greenfield v. Philles Records, Inc., 780 N.E.2d 166, 170 (N.Y. 2002)). Since the best evidence of the parties' intent is the terms set out in writing, "a written agreement that is complete, clear and unambiguous on its face must enforced according to the plain meaning of its terms." Greenfield, 780 N.E.2d at 170. The issue of whether the contract language is ambiguous or clear is a matter of law to be determined by the court. Fed. Ins. Co. v. Am. Home Assurance Co., 639 F.3d 557, 568 (2d Cir. 2011). The court "should not find the language ambiguous on the basis of the interpretation urged by one party, where that interpretation would strain the contract language beyond its reasonable and ordinary meaning." Id. (quoting Metro. Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990)).

It is well established that indemnification provisions in contracts must be given a narrow reading. "When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." Gibbs-Alfano v. Burton, 281 F.3d 12, 19 (2d Cir. 2002) (quoting Hooper Assocs. v. AGS Computers, Inc., 548 N.E.2d 903, 905 (N.Y. 1989)); accord Goodman v. Port Auth. of N.Y. & N.J., 850 F. Supp. 2d 363, 378 (S.D.N.Y. 2012) (citing Weissman v. Sinorm Deli, 669 N.E.2d 242, 246 (N.Y. 1996)). A court should not find an agreement to indemnify "unless it can

be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances." Eastman Kodak Co. v. STWB Inc., 232 F. Supp. 2d 74, 92 (S.D.N.Y. 2002) (quoting Goldwasser v. Geller, 718 N.Y.S.2d 349, 350 (2001)).

In particular, when a contract requires one party to indemnify the other party for legal fees, courts presume that the provision only applies to the cost of litigation with third parties and not to the cost of litigation between the parties themselves, absent clear evidence to the contrary. Bank of N.Y. Trust Co., N.A. v. Franklin Advisers, Inc., 726 F.3d 269, 283 (2d Cir. 2013) (citing Hooper Assocs., 548 N.E.2d at 905). "Promises by one party to indemnify the other for attorneys' fees run against the grain of the accepted policy that parties are responsible for their own attorneys' fees." Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 199 (2d Cir. 2003). Therefore, even where the language of the indemnification provision is silent about the types of claims that it covers, courts "are wary of the inference that indemnification clauses apply to litigation between the parties in the absence of express wording." Bank of N.Y. Trust Co., 726 F.3d at 283. The parties must make it "unmistakably clear" that they intended that the indemnification clause would apply to disputes between the parties themselves. Oscar Gruss, 337 F.3d at 199 (citing Hooper Assocs., 548 N.E.2d at 905).

In this case, defendants argue that a contract between plaintiffs and Kinray requires plaintiffs to indemnify Kinray for the legal costs incurred in a suit brought by plaintiffs. I find that the indemnification clause in the Agreement does not make it "unmistakably clear" that the parties intended to require plaintiffs to indemnify Kinray for the costs of litigation between the parties. The relevant provision reads in full:

> Contractor shall defend, indemnify, and hold KINRAY harmless against any and all claims, demands, suits, costs, losses or damages, including legal costs and attorneys' fees, arising as a result of any act or omission of Contractor, breach of agreement, or as a result of the performance of services under this Agreement.

5

> Without limitation, this indemnification includes claims for compensation or damages arising out of the death or injury of any person or for the destruction or damage to any property which may have been caused directly or indirectly by, or arise out of, any act or omission of Contractor, its assistants, employees, subcontractors, substitutes and/or agents, if any.

Am. Answer & Countercl., Ex. 1, ¶ 14.[4] The provision requires plaintiffs to indemnify Kinray for "legal costs and attorneys' fees," but contains no express language referring to litigation between the parties themselves. Moreover, the second sentence appears to contemplate tort claims brought by third parties for injuries and property damage arising out of the plaintiffs' work as delivery drivers. The phrase "[w]ithout limitation" shows that these are not the only types of suits to which the indemnification provision could apply. Nonetheless, the provision specifically references the types of legal claims that are typically brought by third parties and includes no express reference to litigation between the parties themselves. Courts in this Circuit, applying New York law, require a much clearer statement before reading an indemnification provision to apply to the costs of litigation between the parties. See Scott-Macon Secs., Inc. v. Zoltek Cos., Inc., No. 06-2711-cv, 2007 WL 2914873, at *6 (2d Cir. Oct. 4, 2007) (reversing award of attorneys' fees where language of indemnification clause did not make "unmistakably clear" that it covered disputes between the parties); Coastal Power Int'l, Ltd. v. Transcon. Capital Corp., 182 F.3d 163, 165 (2d Cir. 1999) (affirming district court's rejection of indemnity claim where agreement "does not clearly state the parties intended the loser in a suit for breach of the agreement to pay the winner's attorneys' fees"); cf. Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 178-79 (2d Cir. 2005) (where parties included

---

[4] Defendant Kinray provided the complete "Independent Contractor Agreement" as an exhibit to its counterclaim and cites provisions of the Agreement in the counterclaim. Therefore, the court can examine the full Agreement in order to decide this motion to dismiss. See Arrocha v. City Univ. of N.Y., 878 F. Supp. 2d 364, 368 (E.D.N.Y. 2012) (in deciding a Rule 12(b)(6) motion, a district court may consider "the pleading itself, documents that are referenced in the [pleading], documents that the [party] relied on in bringing suit and that are either in the [party's] possession or that the [party] knew of when bringing suit, and matters of which judicial notice may be taken.").

indemnity provision limited to certain third-party actions and then added second indemnity provision without limiting language, parties made it unmistakably clear that second provision applied to actions between the parties); DLJ Mortg. Capital, Inc. v. Act Lending Corp., No. 07 Civ. 10318(JFK)(THK), 2008 WL 5517589, at *7 (S.D.N.Y. Dec. 1, 2008) (contract language requiring defendant to indemnify plaintiff for legal fees "incurred as a result of any default" under the agreement "unmistakably" required defendant to indemnify plaintiff for legal costs in a default action).

II.     Scope of the Indemnification Provision

While I find that the indemnification provision does not make "unmistakably clear" that it applies to litigation between the parties themselves, I also find that, by any reasonable reading, the scope of the provision does not cover the type of claim at issue here. The plain language of the provision requires plaintiffs to indemnify Kinray only for costs "arising as a result" of (1) an "act or omission" by plaintiffs, (2) a breach of the Agreement, or (3) the performance of services under the Agreement. The use of the term "or" in this list means that the provision unambiguously covers only these three types of expenses. Here, the sole action that Kinray alleges in its counterclaim is that plaintiffs filed a wage and hour suit. Am. Answer & Countercl. at 20, ¶ 5. The sole expense that Kinray alleges is the attorneys' fees incurred in defending against this suit. Id. at 21, ¶ 9. The counterclaim does not sufficiently allege any costs that arise from an act by plaintiffs, a breach of the Agreement, or the plaintiffs' performance of services under the Agreement.

Defendants argue that the first prong of the indemnification provision applies to this counterclaim because the filing of this lawsuit constitutes an act by plaintiffs. Defs. Mem. of Law in Opp'n to Mot. to Dismiss ("Defs. Opp'n"), Dkt. #161, at 4-5. It is true that, in a literal

7

sense, filing a lawsuit requires plaintiffs to take an affirmative action. I agree with plaintiffs, however, that the costs of this lawsuit are better understood to arise as a result of the alleged actions of <u>defendants</u>. Pls. Reply in Supp. of Mot. to Dismiss ("Pls. Reply"), Dkt. #158, at 2. Plaintiffs allege that defendants acted improperly by misclassifying them as independent contractors. Of course, defendants deny these allegations, and whether defendants in fact acted improperly is the issue to be resolved through this litigation. Either way, it is still defendants' actions that are at issue here.

In reaching this conclusion, I note that there do not appear to be any cases within the Second Circuit that have interpreted the scope of similar indemnification provisions in the context of FLSA suits. However, I am guided by the Second Circuit's clear requirement that indemnification provisions must be construed narrowly. I am also persuaded by the reasoning of courts in other circuits that have examined similar indemnity claims in wage and hour suits. These courts have held that defendants' claims for indemnity fell outside the scope of the indemnification provisions because the costs of litigation arose out of the alleged actions of defendants, not the actions of plaintiffs. See <u>Yaw Adu Poku v. Beavex, Inc.</u>, Civil Action No. 13-3327 (SRC), 2013 WL 5937414, at *1 (D.N.J. Nov. 1, 2013) ("This is not litigation over something that Plaintiffs made happen by their actions in performing courier work . . . . The allegedly illegal conduct of Defendant in paying Plaintiffs cannot reasonably be understood to fall within the scope of the alleged indemnification provision, as it arises from Defendant's performance, not Plaintiffs'."); <u>Casias v. Distribution Mgmt. Corp., Inc.</u>, No. 1:11-CV-00874 MV/RHS, 2012 WL 4511376, at *5 (D.N.M. Sept. 28, 2012) ("The only loss that Defendant alleges in the Amended Counterclaim is loss arising out of Plaintiffs' lawsuit seeking damages based upon <u>Defendant's</u> wrongful conduct. This type of loss is not covered by the plain language

8

of the Agreements' indemnification provisions."); Phelps v. 3PD, Inc., No. 08-CV-387-HU, 2008 WL 4911909, at *2 (D. Or. Nov. 12, 2008) (finding that "Defendant's allegedly improper classification of Plaintiffs as independent contractors rather than employees" did not fall within the contract's indemnity provision).[5]

Defendants also argue that the second and third prongs of the indemnification provision apply to this counterclaim, because the costs of litigation arise from plaintiffs' breach of the Agreement or performance of services under the Agreement. Defendants point to cases from other jurisdictions that have upheld defendants' counterclaims for indemnity in wage and hour suits. In Spellman v. American Eagle Express, Inc., the contract required plaintiffs to indemnify defendants' expenses, including legal fees, for any claims "arising out of . . . [plaintiffs'] obligations under this Agreement." 680 F. Supp. 2d 188, 189 (D.D.C. 2010). The contract also required plaintiffs to work for an agreed-upon fee amount that constituted the "total fees" for plaintiffs' services. Id. at 191. Since plaintiffs alleged that they were owed more than the agreed-upon fee amount, the court concluded that the litigation arose out of the plaintiffs' obligations under the agreement and fell within the indemnification provision. Id. Similarly, in Dobbins v.

---

[5] Defendants argue that Yaw Adu Poku and Casias are not applicable because the indemnification provisions in those cases were narrower than the one at issue here. Defs. Opp'n at 4. However, I agree with plaintiffs that the provisions are comparable. Pls. Reply at 2. As noted above, the indemnification provision in the instant case covers three categories of expenses: costs arising from acts by the plaintiff, a breach of the agreement, or the plaintiff's performance under the agreement. All three of these categories are at issue in either Yaw Adu Poku, Casias, or both. In Casias, one of the two indemnification provisions at issue covered acts by the plaintiffs. 2012 WL 4511376, at *1 (requiring indemnification of expenses "arising out of . . . any acts, omissions, or conduct of [plaintiff], its drivers, employees, or agents, whether negligent or otherwise"). The other provision at issue in Casias covered a breach of the agreement. Id. (requiring indemnification of expenses "arising out of or in connection with . . . any breach by [plaintiff] of the terms of this Agreement"). The provisions in both Yaw Adu Poku and Casias included broad language covering any costs arising from the plaintiff's performance under the agreement. Yaw Adu Poku, 2013 WL 5937414, at *1 (requiring plaintiffs to indemnify defendants "from any claims, losses and expenses that arise from the performance of [plaintiffs'] services and obligations under the Contracts"); Casias, 2012 WL 4511376, at *1 (requiring indemnification of costs arising from "the performance or failure of performance of this Agreement by [plaintiff]"). Therefore, I find that the provisions in Yaw Adu Poku and Casias are sufficiently similar to the one in the instant case and that the reasoning of those cases is persuasive here. I note, however, that I find the reasoning of Phelps less applicable because the indemnification provision in that case was, in fact, significantly narrower than the one at issue here. 2008 WL 4911909, at *2 (contract required indemnification for claims "arising from or relating to [plaintiff's] relationship with [plaintiff's] employees" or "[plaintiff's] acts or omissions resulting from or arising out of . . . [plaintiff's] operation of the Equipment").

9

Scriptfleet, Inc., the court cited Spellman and relied on the same argument, finding that the contract required plaintiff to work for a set fee amount, and therefore plaintiff's suit arose from her obligations under the contract and fell within the indemnification provision. Dobbins v. Scriptfleet, Inc., No. 8:11-cv-1923-T-24-AEP, 2012 WL 2282560, at *2 (M.D. Fla. June 18, 2012). Defendants argue that Spellman and Dobbins are analogous to this case, because here, "the counterclaim specifically alleges that Plaintiffs failed to fulfill their obligations under the contracts between the parties." Defs. Opp'n at 4.[6]

      I find, however, that the counterclaim fails to plead sufficient factual allegations to support defendants' argument. Unlike Spellman and Dobbins, the counterclaim here does not allege that plaintiffs had any obligation to work for a set fee amount. The Agreement sets out the fees that Kinray must pay for each delivery, but the provision is phrased as an obligation of Kinray to pay, not an obligation of plaintiffs to accept these fees as their "total" compensation. Am. Answer & Countercl., Ex. 1, ¶ 2. Therefore, Spellman and Dobbins relied on a contractual obligation of the plaintiffs that is not applicable to this case. See Yaw Adu Poku, 2013 WL 5937414, at *3 (distinguishing Spellman and Dobbins on these grounds); Casias, 2012 WL 4511376, at *6 (distinguishing Spellman on these grounds). The counterclaim here asserts that plaintiffs entered into an "Independent Contractor Agreement," and that plaintiffs filed this lawsuit challenging their classification as independent contractors. Am. Answer & Countercl. at 20, ¶¶ 5-6. On its face, the counterclaim fails to state any other factual allegations that would support an inference that plaintiffs breached their contract with Kinray or that the costs of this suit arise from plaintiffs' performance under the contract.

---

[6] Defendants also allege in their opposition brief that plaintiffs misrepresented that they are "in the trucking business," both in the Agreement itself and in the parties' course of conduct. Defendants argue that under the Agreement, an intentional or negligent misrepresentation by the plaintiffs constitutes a breach of the Agreement. Defs. Opp'n at 4. Yet the counterclaim nowhere alleges any misrepresentation by plaintiffs, and the court will not consider a claim that was not raised in the pleadings.

10

Moreover, even if the defendants had asserted a breach of contract claim against plaintiffs, the counterclaim would still fall outside the scope of the indemnification provision. The only costs that defendants assert, and for which they seek indemnification, are the "filing of the instant underlying lawsuit . . . and the resulting legal fees." Defs. Opp'n at 3. This lawsuit arises from defendants' alleged actions, not from any possible breach of the agreement by plaintiffs. Nor can the lawsuit be said to arise from plaintiffs' performance under the Agreement, since the Agreement states that plaintiffs will work as independent contractors, and the issue in this case is that plaintiffs challenge that classification as improper. See Yaw Adu Poku, 2013 WL 5937414, at *2 (noting that even "a meritless lawsuit brought by independent contractors to obtain wages to which they were not entitled…could not, by definition, arise from the Plaintiffs' performance of services under the contract."); Casias, 2012 WL 4511376, at *7 (finding that the Spellman court had to "engage in mental gymnastics to characterize the loss as one arising from the plaintiffs' purported contractual obligation to work for a liquidated fee, when in fact the loss much more directly arose out of the defendant's alleged violation of its statutory obligations under the FLSA.").

### III.   Remedial Purposes of the FLSA and NYLL

I also find that any contrary interpretation of the indemnification provision in this case would contravene the remedial purposes of the FLSA and NYLL. The Second Circuit has explained that the purpose of the FLSA is to "regulate the conduct of employers for the benefit of employees." Herman v. RSR Sec. Servs., Ltd., 172 F.3d 132, 144 (2d Cir. 1999). In light of this purpose, the Circuit has held that employers who are found liable for FLSA violations have no right to seek contribution or indemnification under the statute. Id. (analyzing the text, purpose, remedial scheme, and legislative history of the statute and concluding that "the FLSA

does not authorize contribution or indemnification"). Courts within this Circuit have extended the rule in Herman and held that employers found liable under the FLSA cannot rely on contractual indemnification provisions to shift their losses to their employees. See Goodman, 850 F. Supp. 2d at 389; Gustafson v. Bell Atl. Corp., 171 F. Supp. 2d 311, 328 (S.D.N.Y. 2001) ("Allowing indemnification in cases such as this would permit employers to contract away their obligations under the FLSA, a result that flouts the purpose of the statute.").[7]

Defendants argue that the policy considerations underlying these cases are not applicable here, because defendants are not seeking to shift any liability under the FLSA. Rather, defendants argue, their counterclaim alleges that plaintiffs are independent contractors and are not employees within the meaning of the FLSA and NYLL. At this stage, defendants argue that the court must take this allegation as true. If defendants prevail, then this case will fall outside the scope of the FLSA and NYLL. If plaintiffs prevail, then defendants' claim for indemnity will not apply. Defs. Opp'n at 6-8. In other words, defendants argue that it is premature to dismiss the counterclaim as a violation of FLSA policy, since it has not yet been determined whether the FLSA even applies. Instead, defendants frame this as a case that is simply about "a business' right to assert counterclaims." Id. at 10. Several cases from other circuits endorse this view. See Spellman, 680 F. Supp. 2d at 192 (finding that, although indemnity actions against employees are contrary to FLSA policy, defendant asserts that plaintiffs are independent contractors outside the reach of the FLSA, so "the Court cannot say at this juncture that the counterclaim is

---

[7] Other circuits have also held that employers found liable for FLSA violations cannot bring indemnity claims against employees. See Lyle v. Food Lion, Inc., 954 F.2d 984, 987 (4th Cir. 1992); Martin v. Gingerbread House, Inc., 977 F.2d 1405, 1408 (10th Cir. 1992); LeCompte v. Chrysler Credit Corp., 780 F.2d 1260, 1264 (5th Cir. 1986). Courts have come to differing conclusions on whether employers found liable under the FLSA can seek indemnification or contribution from other defendants. See Goodman, 850 F. Supp. 2d at 389 (dismissing cross-claim for indemnification for FLSA and NYLL claims); Ansoumana v. Gristedes Operating Corp., No. 00 Civ. 253(AKH), 2003 WL 30411, at *1 (S.D.N.Y. Jan. 3, 2003) (noting that non-settling defendants "are unlikely to be able to state a legally sufficient claim for contribution or indemnification" against settling defendant); but see Bogosian v. All Am. Concessions, No. 06-CV-1633 (RRM)(RML), 2011 WL 4460362, at *4 (E.D.N.Y. Sept. 26, 2011) (finding that indemnity clause applies in FLSA case to require one defendant to indemnify another).

preempted by, or contrary to the policy of, the FLSA"); Dobbins, 2012 WL 2282560, at *2 ("[T]he case law barring indemnification claims relating to FLSA liability will not apply to Defendant's counterclaim if Plaintiff is unsuccessful in proving that she was Defendant's employee."); cf. Costello v. Beavex, Inc., No. 12 C 7843, 2013 WL 2156052, at *3 (N.D. Ill. May 17, 2013) (in case brought under Illinois labor law, not FLSA, court finds it "premature" to dismiss counterclaim on public policy grounds because plaintiffs have not yet established that they are employees within the meaning of the statute).

  Yet I reject the notion that the policy considerations underlying the FLSA do not apply at this early stage of the litigation. At the outset, I note that defendants' allegation that plaintiffs are independent contractors, not employees, is a legal conclusion rather than a factual allegation. At the motion to dismiss stage, the court is in no way bound to accept as true a threadbare legal conclusion, even one "couched as a factual allegation." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265 (1986)); see Yaw Adu Poku, 2013 WL 5937414, at *2. Instead, this is a case where plaintiffs allege that the FLSA applies because they are employees, while defendants argue that the FLSA does not apply because plaintiffs are independent contractors. At this stage, the court does not assume either legal argument to be true.

  Moreover, it is clear that in enacting the FLSA, Congress intended to protect plaintiffs' ability to bring claims—a policy that applies before the parties know whether or not the claim will be successful. The statute allows prevailing plaintiffs to recover attorneys' fees from defendants. 29 U.S.C. § 216(b). Through this provision, "Congress sought to promote citizen enforcement of the FLSA . . . [and] to encourage private litigants to act as 'private attorneys general.'" Soler v. G & U, Inc., 658 F. Supp. 1093, 1097 (S.D.N.Y. 1987) (quoting Laffey v. Northwest Airlines, Inc., 746 F.2d 4, 11 (D.C. Cir. 1984)). The FLSA also protects plaintiffs

13

from retaliation by making it unlawful for an employer "to discharge or in any other manner discriminate against any employee" for filing a claim. 29 U.S.C. § 215(a)(3). Certainly, no one contends in this case that defendants have engaged in any activities that constitute prohibited retaliation. In other cases involving claims of retaliation, however, courts have explained that the purpose of this provision is to ensure that employees are not deterred from bringing claims. See Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 472-73 (S.D.N.Y. 2008) ("Courts have held that baseless claims or lawsuits designed to deter claimants from seeking legal redress constitute impermissibly adverse retaliatory actions."). The attorneys' fee provision encourages employees to bring claims, and the retaliation provision protects employees once they do. The policy considerations that led Congress to enact the FLSA are implicated when plaintiffs assert claims, not only when plaintiffs are found to have meritorious claims.

New York's labor laws reflect the same underlying policies. The state statute also includes a provision for attorneys' fees for prevailing plaintiffs. N.Y. Labor Law § 663(1). Courts have held that the Second Circuit's analysis of the FLSA policies in Herman also applies to claims under New York labor law. See Flores v. Mamma Lombardis of Holbrook, Inc., 942 F. Supp. 2d 274, 278 (E.D.N.Y. 2013) (dismissing counterclaim against employees for indemnity under NYLL based on "the same reasoning" as Herman); Gustafson, 171 F. Supp. 2d at 328 n.8 (finding that Herman extends to claims under NYLL because "[t]he policies behind the New York laws are similar to the federal statute.").

By enacting provisions for attorneys' fees for prevailing plaintiffs but not prevailing defendants, the drafters of the FLSA and NYLL made a clear policy choice intended to encourage citizens to bring wage and hour claims. I agree with plaintiffs that defendants should not be able to use the indemnification provision in the Agreement as an "end run" around this

14

scheme. Pls. Mem. at 2. Requiring plaintiffs to indemnify defendants for the costs of litigating an unsuccessful FLSA claim would deter plaintiffs from bringing suit in the first place. See Abdul-Rasheed v. KableLink Commc'ns, LLC, No. 8:13-cv-879-T-24 MAP, 2013 WL 6182321, at *5 (M.D. Fla. Nov. 25, 2013) (finding that plaintiffs could not be required to indemnify prevailing defendants absent a showing that they conducted the litigation in bad faith, because "[t]o hold otherwise would impose a chilling effect that would defeat the remedial purpose of the FLSA."); Yaw Adu Poku, 2013 WL 5937414, at *2 (finding that if indemnification provision was interpreted as defendant asserted, it would "abridge Plaintiffs' rights under the FLSA" and would therefore "be unenforceable").[8]

Therefore, I find that Kinray's claim for indemnification of its attorneys' fees does not fall within the scope of the contractual indemnification provision. Under New York law, the court must presume that the indemnification provision covers only the cost of litigation with third parties, since it does not make "unmistakably clear" that it covers the cost of litigation between the parties. Moreover, the indemnification provision applies only to three categories of expenses, none of which can be reasonably construed to apply to the counterclaim in this case. Any contrary interpretation of the provision would violate the remedial purposes of the FLSA and NYLL, since requiring plaintiffs to indemnify defendants if they lose would contravene the FLSA and NYLL's clear intent to protect plaintiffs' ability to bring suit.

Based on the unambiguous terms of the Agreement, plaintiffs cannot be required to

---

[8] I note that, as plaintiffs point out, the same judge decided Dobbins and Abdul-Rasheed. Pls. Reply at 4-5. While the court found in Dobbins that public policy considerations did not bar the defendant's counterclaim for indemnification, in Abdul-Rasheed the court reached a different view "[u]pon reflection." 2013 WL 6182321, at *6. I am persuaded by the court's more recent position in Abdul-Rasheed: "Whether a person is an employee or an independent contractor is a threshold issue in many FLSA cases. If courts imposed an attorneys' fees award against unsuccessful independent contractors that have indemnity agreements, it would incentivize employers to mis-classify employees as independent contractors in an independent contractor agreement that contains an indemnity provision based on the hope that the possibility of an attorneys' fee award would dissuade litigation on the issue." 2013 WL 6182321, at *6.

15

indemnify defendants for the legal fees incurred in defending this action. Accordingly, I find that defendant Kinray's counterclaim fails to state a plausible claim for relief. Since this finding requires the dismissal of the counterclaim, I find it unnecessary to address plaintiffs' other proposed grounds for dismissal.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to dismiss is granted. Defendant Kinray's counterclaim for indemnification is dismissed with prejudice.

Defendants have also requested leave pursuant to Federal Rule of Civil Procedure 14(a)(1) to implead third-party corporate entities. Dkt. #109. Defendants assert that in addition to entering into contracts with individuals to provide driving services, they also entered into contracts with corporate entities, some of which were owned and operated by plaintiffs. These corporate entities entered into contracts that included the same indemnification provision, so defendants request leave to serve and file third-party complaints against these corporate entities for indemnification of attorneys' fees. Id. The court deferred a decision on this request until after the resolution of plaintiffs' motion to dismiss defendant Kinray's counterclaim. Dkt. #110. Now that the counterclaim is dismissed, defendants' request is denied as moot.

SO ORDERED.

\_\_/s/_____
Allyne R. Ross
United States District Judge

Dated: February 5, 2014
Brooklyn, New York

16