UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
FREDDY FERNANDEZ, LUIS VELASQUEZ,
and GIOVANNY GONZALEZ, on behalf
of themselves and all others similarly situated,

                    Plaintiffs,

                                                                              MEMORANDUM
                                                                                  and ORDER
           -against-                                                             13-CV-4938 (ARR)


KINRAY, INC. and CARDINAL HEALTH, INC.,

                    Defendants.
----------------------------------------------------------------X
GOLD, S., U.S.M.J.:

## INTRODUCTION

Plaintiffs Freddy Fernandez, Luis Velasquez, and Giovanny Gonzalez bring this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and New York Labor Law ("NYLL"), alleging that they and other similarly situated employees of the defendants were misclassified as independent contractors, earned but were not paid overtime wages, and had expenses improperly deducted from their wages. Compl. ¶¶ 4-6. Plaintiffs now move for leave to file an amended complaint. Docket Entries 189-191. Defendants both oppose plaintiffs' motion and cross-move for judgment on the pleadings. Docket Entries 194-196. The parties have consented to present their motions to me for decision. Docket Entries 193, 199. For the reasons stated below, plaintiffs' motion for leave to amend is granted and defendants' cross-motion for judgment on the pleadings is denied.

## FACTS

The facts set forth below are drawn from plaintiffs' proposed amended complaint ("Am. Compl."), Docket Entry 191-3. Until it was purchased by defendant Cardinal Health in 2010,

defendant Kinray was a large wholesaler and distributor of pharmaceuticals. Am. Compl. ¶ 82. Cardinal Health was and continues to be a large wholesaler and distributor of pharmaceuticals as well. Am. Compl. ¶ 83. Plaintiffs are drivers and helpers who delivered pharmaceutical products sold by Kinray and Cardinal to defendants' customers. Am. Compl. ¶ 84.

Plaintiffs' proposed pleading includes allegations anticipating certification to proceed as a collective action pursuant to 29 U.S.C. § 216(b) and as a class action pursuant to Federal Rule of Civil Procedure 23. The amended complaint describes three categories of employees to receive notice of a collective action: drivers who owned and operated their own vehicles (Am. Compl. ¶¶ 23-24), drivers who owned and operated their own vehicles and used helpers (Am. Compl. ¶¶ 25-26), and helpers who assisted drivers (Am. Compl. ¶¶ 27-28). In addition to these three categories of employees, plaintiffs' Rule 23 class allegations include a fourth sub-class of "stand-by" and "extra" drivers. Am. Compl. ¶¶ 68-81.

The proposed amended complaint contains detailed allegations about the hours worked by the various named plaintiffs as well as several allegations applicable to all putative class and collective action members. These include assertions that the plaintiffs' primary duty was to deliver merchandise to defendants' customers, that plaintiffs were required to submit to credit and criminal history investigations conducted by defendants before being hired, and that defendants demanded that plaintiffs to report to work at specific times, established delivery routes plaintiffs were required to follow, and imposed discipline on plaintiffs who arrived late for work or did not make deliveries in the manner defendants directed. Am. Compl. ¶¶ 262-266. Plaintiffs further allege that they worked for defendants on a daily, full-time basis – often for many years – for defendants, derived their entire compensation from defendants, had no opportunity for profit or risk of loss, and were prohibited from offering their delivery services

2

directly to defendants' customers. Am. Compl. ¶¶ 271-275. Plaintiffs further allege that all putative class members regularly worked more than 40 hours per week but were not paid at overtime rates when they did so. Am. Compl. ¶ 276.

## DISCUSSION

### A.     Standards Governing Leave to Amend and Judgment on the Pleadings

Leave to amend a pleading "should [be] freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith . . . undue prejudice to the opposing party . . . futility of the amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"). Amendments are generally favored because they "tend to facilitate a proper decision on the merits." *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 396 (E.D.N.Y. 1998) (internal quotation marks and citations omitted). The party opposing an amendment to the pleadings has the burden to establish "that leave to amend would be prejudicial or futile." *Id. See also Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d. Cir. 1993) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith."); *Harrison v. NBD Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1998). Thus, "[i]f the movant has at least colorable grounds for relief, justice . . . requires that the court grant leave to amend the complaint." *Sokolski*, 178 F.R.D. at 396 (quoting *Golden Trade, S.r.L. v. Jordache*, 143 F.R.D. 504, 506 (S.D.N.Y. 1992)) (internal quotation marks and brackets omitted).

Whether a proposed amendment to a pleading would be futile is decided pursuant to the same standard that applies to a motion to dismiss. "An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis." *Chan v. Reno*, 916 F. Supp. 1289, 1302 (S.D.N.Y. 1996). "In deciding

whether an amended complaint meets this threshold, the Court is required to accept the material facts alleged in the amended complaint as true and draw reasonable inferences in the plaintiffs' favor." *Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d 442, 451 (E.D.N.Y. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). These principles apply as well when considering a motion to dismiss, whether under Rule 12(b)(6) or 12(c):

> The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim. In both postures, the district court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor. The court will not dismiss the case unless it is satisfied that the complaint cannot state any set of facts that would entitle [the plaintiff] to relief.

*Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2011) (internal citations omitted).

To survive a motion to dismiss under Rule 12(b)(6) – and likewise under 12(c) – "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). In other words, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the court accepts as true all well-pleaded factual allegations, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Dismissal is appropriate if the well-pleaded allegations in the complaint do not "nudge[] . . . claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

4

Because defendants who oppose leave to amend on futility grounds face the same standard as those who move for judgment on the pleadings under Rule 12(c), I address defendants' motion to dismiss and their opposition to plaintiffs' motion for leave to amend on grounds of futility together.

**B.      Plausibility of Plaintiffs' Allegations of Employee Status**

Plaintiffs' proposed amended complaint differs from their original pleading by adding specific allegations about the duties plaintiffs performed on behalf of the defendant corporations. *Compare* Compl. ¶¶ 37-44 *with* Am. Compl. ¶¶ 85-95, 260-280.  Defendants oppose the amendment, arguing that it would be futile for the plaintiffs to make the proposed changes. Defs.' Mem. at 5 *et seq.*, Docket Entry 195.  More specifically, defendants argue that, even as amended, the complaint fails to plead adequately that plaintiffs were employees of the defendant corporations rather than independent contractors.  Defs.' Mem. at 7.  Contrary to defendants' argument, I conclude that the additional facts alleged in the amended complaint, accepted as true for purposes of the pending motions, are sufficient to "nudge" plaintiffs' claims that they were employees of the defendants, rather than independent contractors, "across the line from conceivable to plausible."  *See* Pls.' Mem. at 8, Docket Entry 201; *Twombly*, 550 U.S. at 570.

In *Brock v. Superior Care, Inc.*, the Second Circuit set forth the factors that distinguish between employees and independent contractors for purposes of the FLSA.  840 F.2d 1054, 1058-59 (2d Cir. 1988).  The five factors enumerated by the Court, intended to shed light on the "economic reality" of the relationship between the putative employee and employer, are

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

5

*Id.* (citing *United States v. Silk*, 331 U.S. 704, 716 (1947)). The Court went on to explain that "[n]o one of these factors is dispositive; rather, the test is based on a totality of the circumstances. The ultimate concern is whether, as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in business for themselves." *Brock*, 840 F.2d at 1059 (internal citations omitted).

In addition to enumerating the factors for interpreting employment relationships, *Brock* provides a useful example of their application. The lead defendant in *Brock*, Superior Care, referred temporary healthcare workers, primarily nurses, to clients. 840 F.2d at 1057. Patients seeking nursing assistance contacted Superior Care directly. *Id.* Nurses seeking employment with Superior Care were interviewed, placed on a roster, and assigned work as the need for services arose. *Id.* Nurses were free to decline work for any reason. *Id.* A nurse who accepted an assignment reported directly to the assigned patient. *Id.* Superior Care's supervision was limited to visiting job sites once or twice monthly and receiving written patient care notes that were in any event required by law. *Id.* Nurses were paid hourly by Superior Care and prohibited from making fee agreements directly with patients. *Id.* Superior Care permitted nurses to accept work from other providers, and many nurses did so. *Id.* Although Superior Care asserted that, under these circumstances, the nurses were independent contractors, the District Court found, and the Circuit Court affirmed, that the nurses were employees and not independent contractors for purposes of the FLSA. *Id.* at 1061. The Second Circuit, looking to the five factors set forth above, emphasized that nurses had no opportunity for profit or loss and had virtually no investment in the business, and that their services were integral to Superior Care's operations. *Id.* at 1059. Superior Care's control over the nurses' hours and wages and supervision of the nurses' work through site visits and review of patient notes indicated a level of authority over the

6

nurses that further supported the Court's determination of employee status. *Id.* at 1060. While the Court noted that the level of skill that the nurses possessed and the transient nature of their work for defendants weighed slightly in the direction of independent contractor status, it concluded that the totality of the circumstances indicated that the nurses' economic reality was that of employees. *Id.* at 1060-61.

*Arena v. Delux Transportation Services, Inc.*, on which the plaintiffs rely heavily, also provides a helpful comparison to this case. In *Arena*, the plaintiff was a limousine driver. He alleged in his complaint that he was an at will employee of the defendants, and that they "exercised full control over, *inter alia*[,] Plaintiff's hours, the routes Plaintiff drove, the car Plaintiff drove, the passengers to take, the manner in which to greet passengers, which fares to take, and the manner in which the car was kept clean." *Arena v. Delux Transp. Servs., Inc.*, 2013 WL 654418, at *1 (E.D.N.Y. Feb. 15, 2013). Defendants in *Arena* moved to dismiss, arguing that plaintiff was an independent contractor because he leased the car he drove from defendants, determined the hours he wanted to work, and kept his cash fares. *See Arena*, 2013 WL 654418, at *1. The Court found that the plaintiff had sufficiently pled his claims based on the "totality of the circumstances," relying on the factors established in *Brock*. *Id.* at *2. The level of control the plaintiff claimed defendants asserted over his work, combined with the early stage of discovery in the case, led the court to deny defendants' motion to dismiss. *Id.*

The level of control alleged by plaintiff in *Arena* is similar to the control plaintiffs here claim defendants exercised over them. For example, just as plaintiff in *Arena* alleged that he had to abide by the defendant's requirements as to his hours, routes, passengers, and fares, plaintiffs here allege that they were required to report to defendants' warehouses at precise times each day, were given specific delivery routes from which they were not allowed to deviate, and were

7

disciplined by defendants if they were late arriving for their shifts or if they departed from their prescribed routes. Am. Compl. ¶¶ 264-66. Plaintiffs further allege that they were required to submit to credit and background checks by the defendants, worked daily and full-time, and were not allowed to deal directly with defendants' customers but had to go through defendants for any interactions. Am. Compl. ¶¶ 263, 275, 272. Plaintiffs also provide their respective years of employment, alleging that some of the plaintiffs worked for defendants for nearly twenty years or more, and on a daily, full-time basis during the years relevant to this case. *See* Am. Compl. ¶¶ 85-86, 119-20, 165-66, 178-79, 217-18, 252-53. These allegations are similar for plaintiffs in each of the subcategories named in the amended complaint, *see* Am. Compl. ¶¶ 262-76, and describe a level of control comparable to that alleged in *Arena* and in *Brock*.

Other *Brock* factors also counsel in favor of finding that plaintiffs plausibly claim that they were employees and not independent contractors. The allegations in the amended complaint indicate that plaintiffs, delivery drivers for the defendants, had no opportunity for profit or loss or any investment in defendants' business. Instead, they depended on defendants for work and payment, and had no independent relationship with the customers to whom they made deliveries. *See* Am. Compl. ¶¶ 269-72. Plaintiffs are unskilled workers and did not exercise independent initiative in finding customers for their delivery services, but instead relied on defendants' assignments and communications with customers. *See* Am. Compl. ¶¶ 262, 265, 272. Many of the plaintiffs worked for the defendant companies for many years, even decades. *See* Am. Compl. ¶¶ 85, 119, 165, 178, 217, 252. Finally, plaintiffs allege that defendant Kinray, Inc., now owned by Cardinal Health, Inc., is a pharmaceutical wholesaler and distributor. Am. Compl. ¶¶ 82-83. Thus, plaintiffs' work – delivering defendants' pharmaceutical products to their customers – is an integral part of defendants' business. Am. Compl. ¶ 84. In sum, the totality of

the circumstances alleged here, as in *Brock* and *Arena*, indicates that the plaintiffs plausibly plead their employee status in their proposed amended complaint.

*Arena* and *Brock* are more comparable to this case than are the authorities cited by defendants. For example, defendants rely on *Gisomme v. HealthEx Corp. et al*, in which plaintiffs were delivery drivers for a courier service that delivered healthcare materials. 2014 WL 2041824, at *1 (E.D.N.Y. May 15, 2014). The Court found that the plaintiffs did not adequately allege that they were employees of the defendants, and granted defendants' motion to dismiss. Plaintiffs made insufficiently specific allegations about the hours they worked and the authority a particular individually-named defendant exercised over them, and did not provide enough detail to plead employee status adequately. *See Gisomme*, 2014 WL 2041824, at *4. The Court noted in particular that plaintiffs failed to allege which of two entity defendants supervised or controlled their work schedules, determined their rates of pay or maintained their employment records. *Id.* at *4. Thus, it appears that plaintiffs in *Gisomme* did not allege details like those included in plaintiffs' amended complaint here, described above. Even so, the Court in *Gisomme* granted defendants' motion to dismiss without prejudice to the plaintiffs' right to amend their complaint and provide more specific factual support for their FLSA claims. *Id.*

Defendants' reliance on *Browning v. Ceva Freight, LLC,* 885 F. Supp. 2d 590 (E.D.N.Y. 2012) is similarly misplaced. While *Browning* involved delivery drivers, those drivers signed independent contractor agreements, could reject or accept dispatches offered by defendant, decided the days and times they would work and chose the routes they would travel, were paid on a fee-per-delivery rather than an hourly basis, and were free to offer delivery services to others. 885 F. Supp. 2d 590 at 593-94. Moreover, the case was before the Court on a motion for summary judgment rather than a motion to dismiss or for leave to amend. *Id.* at 596.

9

Defendants also rely on *Saleem v. Corporate Transportation Group* to support their argument that plaintiffs were independent contractors. 2014 WL 4626075 (S.D.N.Y. Sept. 16, 2014); *see* Docket Entry 207. In *Saleem*, plaintiffs were drivers of "black cars," a type of ground transportation service. 2014 WL 4626075, at *2. They sued defendants, who together owned and operated the black car business, for FLSA and NYLL violations. *Id.* at *1. The Court granted defendants' motion for summary judgment, finding that the plaintiffs were independent contractors rather than employees. *Id*. at *15. The court assessed each of the *Brock* factors and found that, although the plaintiffs were integral to the defendant's business, the other factors and the totality of the circumstances pointed to independent contractor status. *Id.* Because the motion before the Court was one for summary judgment, the Court was able to examine the evidence developed in discovery when it considered the *Brock* factors. That evidence led the Court to find that drivers set their own schedules and took vacations whenever they wished, were free to and often did work for other car services and private customers of their own, had their own credit card merchant accounts, enjoyed opportunities for profit and loss in that they decided how many hours to work and whether to hire other drivers, decided whether to buy or lease franchises which they could in turn sell or lease, were required to exercise a significant amount of independent initiative to obtain work, and were empowered to terminate their franchise agreements at will. *Id.* at *10, *12, *14. Based on these facts, the Court concluded that the drivers were independent contractors and granted summary judgment for the defendants. *Id.* at *15.

Neither *Gisomme, Browning* nor *Saleem* involved facts that parallel the circumstances here. Although plaintiffs in *Gisomme* and plaintiffs here did similar work, their respective pleadings are very different. Unlike the plaintiffs in *Gisomme*, plaintiffs here assert specific facts

that plausibly claim employee status and go beyond a mere conclusory recitation of the relevant factors. *Saleem* is also substantially different from the present case. The procedural differences between this case and *Saleem* are of particular importance; while *Saleem* involved a motion for summary judgment made after the close of discovery, discovery in this case is ongoing and defendants seek dismissal under Rule 12. Accordingly, the cases invoked by defendants fail to provide meaningful support for their position.

For all these reasons, I conclude that plaintiffs have adequately pled facts supporting their claims of employee status under the FLSA.

**C.     Collateral Estoppel**

In support of their Motion for Judgment on the Pleadings and their opposition to plaintiffs' Motion to Amend, defendants have submitted a letter with supplemental information about a putative opt-in plaintiff, Javier Munoz. Defendants' Letter of November 5, 2014, Docket Entry 211. Defendants' letter reports that Munoz was sued in a personal injury lawsuit in Dutchess County, New York as a result of an automobile accident involving Munoz and another individual. Kinray, Inc. and Cardinal Health, LLC were also named as defendants in that action, and they successfully moved for summary judgment on the basis that Munoz was an independent contractor. Docket Entry 211. In reaching its decision, the Court referenced a contract between Munoz and the defendant corporations describing Munoz as an independent contractor. In their letter, the defendants argue that Munoz is now estopped from arguing in this case that he is an employee for purposes of the FLSA. Defendants further argue that the determination by the Dutchess County Supreme Court renders the proposed class and collective action claims by the plaintiffs futile and insufficient. Docket Entry 211. Plaintiffs responded to defendants' letter on November 12, 2014, arguing that the finding of the Dutchess County Supreme Court does not

11

preclude Munoz or any other plaintiffs from bringing their FLSA claims as a collective action. Docket Entry 212.

Collateral estoppel "bar[s] the relitigation of an issue of law or fact that was raised, litigated, and actually decided by a judgment in a prior proceeding between the parties, if the determination of that issue was essential to the judgment, regardless of whether or not the two proceedings are based on the same claim." *McGuiggan v. CPC Intern., Inc.*, 84 F. Supp. 2d 470, 477-78 (2000) (citing *N.L.R.B. v. United Technologies Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983)). The *McGuiggan* plaintiffs had previously brought suit against the defendant based on a number of claims, including one under the Employee Retirement Security Income Act ("ERISA"). The suit was dismissed because of a lack of evidence to support plaintiffs' assertion that they were employees rather than independent contractors. *See McGuiggan*, 84 F. Supp. 2d at 474. Plaintiffs later brought the FLSA claim that was the basis for *McGuiggan*, and the defendant moved for summary judgment claiming that the doctrine of collateral estoppel prevented the plaintiffs from relitigating the issue of their employment status. *Id.* at 476. The Court determined, however, that plaintiffs were not precluded from bringing their FLSA claim, reasoning that "the standard for determining 'employee' status under the FLSA differs from that under the common law or ERISA." *Id.* at 476-77. The Court went on to explain that, unlike the definition applicable under ERISA, "the definition of employee is to be read expansively under the FLSA, and thus requires application of the 'economic reality' test." *Id.* at 478. The Court further noted that, "[i]n interpreting congressional labor statutes, the Supreme Court has specifically rejected the application of well-established agency law concepts of 'employee' and 'independent contractor.'" *Id.* at 479.

12

Just as the test for employee status under the FLSA is different from the standard for ERISA claims and allegations of common law agency, it is also different from the test applicable to personal injury claims. The determination of employment status for the purpose of determining vicarious liability in a personal injury case is generally governed by the law of agency. *See Royal Ins. Co. of America v. RU-VAL Elec. Corp.*, 918 F. Supp. 647, 652-53 (E.D.N.Y. 1996) (relying on the Restatement (Second) of Agency in determining whether an entity was an employee or independent contractor in a tort case). As noted above, though, the test for employee status in the agency context is different from the test under the FLSA, which is broader. *See McGuiggan*, 84 F. Supp. 2d at 478 (stating that "[t]he Supreme Court has emphasized that the FLSA defines the verb 'employ' expansively, and that it thus stretches the meaning of 'employee' to cover some parties *who might not qualify as such under a strict application of traditional agency law principles."*) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)) (internal quotations omitted) (emphasis in original). Accordingly, Munoz is not precluded from participating in this lawsuit as an opt-in plaintiff.

Defendants claim that Mr. Fernandez, a named plaintiff, is also collaterally estopped from litigating his employment status is similarly without merit. Defendants mention in a footnote to their letter of November 5, 2014 that Fernandez claimed to be an independent contractor in a bankruptcy proceeding, and argue that he therefore may not now claim to be an employee. Docket Entry 211. As is so with respect to the law of agency, employment status for the purposes of a bankruptcy proceeding is determined differently than for an FLSA claim. *See In re Critical Care Support Servs., Inc.*, 138 B.R. 378, 381 (Bankr. E.D.N.Y. 1992) (analyzing question of employee status using common law test). Fernandez is thus not precluded by his contention in a bankruptcy proceeding from bringing his FLSA claim in this case.

13

**D.      Allegations Pertaining to Collective and Class Action Certification**

The mandate of Rule 15(a) that leave to amend shall be freely given applies to amendments joining additional plaintiffs. *See Sokolski*, 178 F.R.D. at 396 (granting plaintiff leave to amend complaint to name additional plaintiffs and assert a class action); *Junior Gallery, Ltd. v. Neptune Orient Line, Ltd.*, 1997 WL 26293, at *2 (S.D.N.Y. Jan. 22, 1997) ("[I]t is clear that Rule 15(a) may be utilized to add a new plaintiff."); *Andujar v. Rogowski*, 113 F.R.D. 151, 158 (S.D.N.Y. 1986) (allowing amendment of complaint to add plaintiffs who had same cause of action against defendants as original plaintiffs). Amendments to a complaint to add plaintiffs in an FLSA case may be particularly appropriate; "FLSA's broad remedial nature and its collective action provision suggest that the act contemplates this very situation, and given the choice between litigating this claim separately or in the aggregate, it favors the latter." *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 199 (S.D.N.Y. 2014).

Plaintiffs' proposed amended pleading adds plaintiffs and also specifies subcategories of employees within the overall class of plaintiffs; plaintiffs apparently anticipate seeking leave to proceed with a collective action on behalf of three categories of employees and to certify subclasses pursuant to Rule 23 on behalf of four categories of employeess. Pls.' Mem. at 2, Docket Entry 190; Am. Compl. ¶¶ 11-81. Defendants argue that the proposed amendments are futile because plaintiffs fail to plead facts that would support collective certification under the FLSA or class certification under Rule 23 of the Federal Rules of Civil Procedure. Defs.' Mem. at 7-8, Docket Entry 195. More specifically, defendants argue that the class of plaintiffs suggested in the proposed amended complaint is "implausible," largely because the alleged claims of the class members do not present sufficiently common questions of fact and law. Defs.' Mem. at 8. Defendants' arguments are insufficient to warrant denial of the plaintiffs'

14

motion. Neither do they counsel in favor of granting the defendants' motion for judgment on the pleadings at this relatively early stage in the litigation.

     *a.*  *Futility as to Certification of a Collective Action*

Section 216(b) of the FLSA provides that that "one or more employees" may move to have their case certified as a collective action "for and in behalf of himself or themselves and other employees similarly situated." *See also Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 103 (S.D.N.Y. 2003). Certification of a collective action "is only a preliminary determination as to which potential plaintiffs may in fact be similarly situated," and "merely provides an opportunity for potential plaintiffs to join." *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 81-82 (E.D.N.Y. 2008. "After discovery, . . . the court examines with a greater degree of scrutiny whether the members of the plaintiff class – including those who have opted in – are similarly situated." *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008) (citing *Jacobs v. New York Foundling Hospital*, 483 F. Supp. 2d 251, 265 (E.D.N.Y. 2007)).

To proceed with a collective action, "[t]he named plaintiff must . . . show that he is similarly situated to the prospective plaintiffs who would benefit from notice of the right to join." *Bowens*, 546 F. Supp. 2d at 81. Although neither the FLSA nor its implementing regulations define the term "similarly situated," courts in this Circuit "have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Morales v. Plantworks, Inc.*, 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010); *Bowens*, 546 F. Supp. 2d at 82. "Courts regularly grant motions for approval of a collective action notice based upon employee affidavits setting forth a

15

defendant's plan or scheme to not pay overtime compensation and identifying by name similarly situated employees." *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007) (internal quotation marks omitted).

Here, defendants oppose plaintiffs' request to amend the complaint to add additional plaintiffs primarily on the ground that plaintiffs' proposed subclasses demonstrate that the named plaintiffs are not situated similarly to the prospective plaintiffs who might join a collective action. Defs.' Mem. at 8. Although plaintiffs' identification of subclasses suggests that there are some circumstances distinguishing groups of plaintiffs, there are also allegations that all plaintiffs were subject to the same pay practices followed by defendants in violation of the FLSA. *See* Am. Compl. ¶¶ 260-61. Plaintiffs' proposed amended pleading also alleges facts common to all plaintiffs that, if proven, may be sufficient to establish that each of the collective action sub-groups were employees and not independent contractors. *See* Am. Compl. ¶¶ 262-75. Because plaintiffs are required at the pleading stage to make only a modest factual showing of a common policy or plan, the facts they allege in support of a collective action in their proposed amended pleading are sufficient to warrant leave to amend and avoid dismissal.

    b.  *Futility as to Rule 23 Class Certification*

A similar analysis supports allowing plaintiffs to assert a putative class action. Rule 23(a) of the Federal Rules of Civil Procedure allows named plaintiffs to sue as representatives if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *See also Wal-Mart Stores, Inc. v. Dukes*, _ U.S. _, 131 S. Ct. 2541, 2548 (2011). "In the Second Circuit, numerosity is presumed at a level of 40

members, and the exact number and identity of members is unnecessary, even for certification." *Ruggles v. Wellpoint*, 253 F.R.D. 61, 66 (N.D.N.Y. 2008) (quoting *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993)) (internal citations and quotation marks omitted). "Plaintiff[s] must also allege questions of law or fact that are common to the class and assert that [their] claims are 'typical' of the class." *Ruggles*, 253 F.R.D. at 66.

The proposed class must also satisfy one of the requirements in Rule 23(b). *Wal-mart*, _ U.S. _, 131 S. Ct. at 2548. Here, plaintiffs seek to rely on sub-paragraph 23(b)(3). Am. Compl. ¶¶ 35, 48, 61, 75. Rule 23(b)(3) requires that "the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Relevant factors are "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. Pro. 23(b)(3).

Defendants reiterate their collective action argument that plaintiffs' identification of subgroups of employees within the broader class demonstrates that the claims of the proposed class do not raise common questions but instead suggests that a fact-specific inquiry into the employment status of each individual claimant will be required. *See* Defs. Mem. at 8, Docket Entry 195. Indeed, plaintiffs do identify four subclasses in their proposed amended pleading. *See, e.g.,* Am. Compl. ¶¶ 29, 42, 55, 68-69. However, plaintiffs also claim that all of the employees, regardless of their subcategory, were subject to a policy of misclassification as independent contractors. Am. Compl. ¶¶ 31, 44, 57, 71. In addition, plaintiffs enumerate

17

specific questions common to the entire class that are identical for each of the subcategories. Am. Compl. ¶¶ 35, 48, 61, 75. Finally, the same factual allegations cited above with respect to defendants' common pay practices and the circumstances common to all plaintiffs that, if proven, may be sufficient to establish that each sub-class is comprised of employees and not independent contractors, apply here.

Just as in non-class action cases, when deciding whether to grant a motion to amend a complaint, courts must view the claims in the light most favorable to the plaintiff. Furthermore, "[n]o heightened pleading requirement attaches solely due to the fact that a complaint asserts, *inter alia*, a Rule 23 class action." *Ruggles*, 253 F.R.D. at 65. Plaintiffs' proposed amended complaint contains sufficient facts to defeat a motion to dismiss and to warrant further examination of the class certification question on the merits. "[A] decision about certification need not be made at the outset; a court should delay a certification ruling until information necessary to reach an informed decision is available." *Ruggles*, 253 F.R.D. at 66-67 (holding that a determination about class certification based on the pleadings would be premature before discovery is complete, even where plaintiff sought to represent a class that included three types of workers); *see also Philip Morris Inc. v. Nat. Asbestos Workers Med. Fund*, 214 F.3d 132, 135 (2d Cir. 2000) (per curiam) ("[T]here can be no doubt that it is proper for a district court, prior to certification of a class, to allow discovery and to conduct hearings to determine whether the prerequisites of Rule 23 are satisfied.") (citation omitted).

In light of the lenient standard for amendment pursuant to Rule 15(a), the fact that discovery relevant to class certification has not yet been completed, and the added consideration that this case is brought under a statute – the FLSA – that favors litigating plaintiffs' claims against a common defendant in aggregate, I conclude that defendants have failed to meet their

high burden to defeat plaintiffs' motion to amend or establish that dismissal is warranted. *See Scott*, 300 F.R.D. at 199.

**E. Prejudice**

Finally, defendants claim that they would suffer prejudice if plaintiffs are given leave to amend their complaint. Defs.' Mem. at 11. Defendants' primary basis for asserting prejudice is that they have already taken depositions, and in particular the deposition of plaintiff Fernandez, and that there was some uncertainty at the time of the deposition about whether Fernandez would be a named plaintiff in the case and whether he would seek to represent a Rule 23 class. Defs.' Mem. at 11. Defendants stress that they have expended substantial resources defending the case, and that additional expenses will be incurred if plaintiffs are permitted to amend. *Id.* However, it is clear that allegations of prejudice because of time, effort, or money expended in a case do not constitute undue prejudice sufficient to defeat a motion to amend. *See Block*, 988 F.2d at 351 (holding that the district court did not abuse its discretion in permitting defendant to amend its answer where plaintiff alleged prejudice on the basis of time, effort, and money expended in litigation); *Scott*, 300 F.R.D. at 200 (holding that amendment to the complaint did not unduly prejudice defendant where defendant's discovery costs would increase and their deposition strategy would need to be altered as a result of the amendment). Furthermore, despite defendants' claim of prejudice regarding the deposition of Fernandez, defendants themselves note that he was a named plaintiff at the time of his deposition, and he is a named plaintiff as well in the amended complaint proposed by plaintiffs. Any confusion about his role in the interim, including whether he would seek to represent a class, is unlikely to have prejudiced defendants such that leave to amend would be properly denied. In fact, if defendants seek leave

to continue the Fernandez deposition and are able to demonstrate a genuine need for additional testimony, they may make an appropriate application.

## CONCLUSION

For all of these reasons, plaintiffs' motion to amend the complaint is GRANTED and defendants' cross-motion for judgment on the pleadings is DENIED.

**SO ORDERED.**

**/s/**
**STEVEN M. GOLD**
**United States Magistrate Judge**

Brooklyn, New York
December 30, 2014

*U:\MHS 2014-2015\Fernandez v. Kinray\Fernandez v. Kinray FINAL2.docx*