UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

FREDDY FERNANDEZ, LUIS VELASQUEZ, and GIOVANNY GONZALEZ, on behalf of themselves and all others similarly situated,

                Plaintiffs,

    -against-

KINRAY, INC., CARDINAL HEALTH, INC.,

                Defendants.

------------------------------------------------------------X

Case No.: CV 13-4938

Hall, J.
Gold, M.J.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

           Felice B. Ekelman, Esq.
           Noel P. Tripp, Esq.
           Laura M. Bedson, Esq.
           JACKSON LEWIS P.C.
           666 Third Avenue, 29th Floor
           New York, New York 10017
           (212) 545-4000

           *ATTORNEYS FOR DEFENDANTS*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

DEFENDANTS' STATEMENT ON REPLY ........................................................................... 1

    I.   THERE ARE NO DISPUTED FACTS AS TO PLAINTIFFS' STATUS AS CONTRACTORS .................................................................................................... 1

        A.   Kinray did not control Routeholders. ............................................................... 1

        B.   Routeholders invested in their business enterprise and in fact had opportunity for profit or loss. ....................................................................................... 6

        C.   Routeholders Were Able to Select, Pay, Replace, and Control Their Helpers Without Input From Kinray. ................................................................................ 8

        D.   Routeholders and Helpers Clearly Are Independent Contractors Under the New York Labor Law's Distinct Test .................................................................. 10

        E.   Plaintiffs Do Not Dispute That Their Labor Law Section 193 and 195 Claims Must Be Dismissed ............................................................................................. 10

    II.   PLAINTIFFS FAIL TO CONTEST DEFENDANTS' ASSERTION OF THE LOCAL DRIVER EXEMPTION UNDER 29 U.S.C. § 213(b)(11). ......................... 11

    III.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO LIQUIDATED DAMAGES AND THE FLSA STATUTE OF LIMITATIONS IS PROPERLY BEFORE THE COURT. ........................................................................................... 11

CONCLUSION ......................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Agerbrink v. Model Serv. LLC*,
    2017 U.S. Dist. LEXIS 33249 (S.D.N.Y. Mar. 8, 2017) ...................................................... 7

*Arnold v. Ben Kanowsky, Inc.*,
    361 U.S. 388 (U.S. Feb. 23, 1960) ............................................................................................. 11

*Artola v. MRC Express, Inc.*,
    2015 U.S. Dist. LEXIS 130183 (S.D. Fla. Sept. 25, 2015) ............................................... 9

*Brock v. Superior Care, Inc.*,
    840 F.2d 1054 (2d Cir. 1988) ...................................................................................................... 2

*Browning v. CEVA Freight, LLC*,
    885 F. Supp. 2d 590 (E.D.N.Y. 2012) ................................................................................ 4, 5, 10

*Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*,
    769 F.2d 919 (2d Cir. 1985) ...................................................................................................... 12

*Ethelberth v. Choice Sec. Co.*,
    91 F. Supp. 3d 339 (E.D.N.Y. Feb. 26, 2015) ..................................................................... 4

*Gayle v. Harry's Nurses Registry, Inc.*,
    594 Fed App'x 714 (2nd Cir. 2014) ....................................................................................... 7

*Hart v. Rick's Cabaret Int'l, Inc.*,
    967 F. Supp. 2d 901 (S.D.N.Y. Sept. 10, 2013) ............................................................... 10

*Kai Peng v. Uber Techs., Inc.*,
    2017 U.S. Dist. LEXIS 25840 (E.D.N.Y. Feb. 23, 2017) .................................................. 3

*Ruiz v. Affinity Logistics Corp.*,
    754 F.3d 1093 (9th Cir. 2014) ................................................................................................... 8

*Saleem v. Corporate Transportation Group, Ltd., et al.*,
    2017 U.S. App. LEXIS 6305 (2d Cir. 2017) ........................................................... 4, 5, 8

*Scantland v. Jeffry Knight, Inc.*,
    721 F.3d 1308 (11th Cir. 2013) ................................................................................................. 8

*Simpkins v. Dupage Hous. Auth. & DHA Mgmt.*,
    2017 U.S. Dist. LEXIS 123598 (N.D. Ill. Aug. 1, 2017) .................................................. 7

*Thomas v. TXX Servs.*,
    663 Fed. Appx. 86 (2d Cir. Oct. 25, 2016) ........................................................................ 4

*United States v. Silk*,
    331 U.S. 704 (1947) ...................................................................................................... 4, 5

*Velu v. Velocity Express, Inc.*,
    666 F. Supp. 2d 300 (E.D.N.Y. 2009) ............................................................................ 10

**Statutes**

26 U.S.C. § 7206 ...................................................................................................................... 7

New York Labor Law § 193 ................................................................................................... 10

New York Labor Law § 195 ................................................................................................... 10

**Rules**

12 N.Y.C.R.R. § 142-2.2. ....................................................................................................... 10

Fed. R. Civ. P. 56(d) .............................................................................................................. 12

Defendants Cardinal Health, Inc. and Kinray, Inc. ("Kinray", together with Cardinal Health, Inc. the "Defendants"), by their attorneys Jackson Lewis P.C., respectfully submit this Reply Memorandum of Law in further support of Defendants' Motion for Summary Judgment as to the Bellwether Plaintiffs. Plaintiffs' Opposition fails to identify any material disputed fact which would preclude judgment in favor of Defendants. Further, as discussed below, Plaintiffs' efforts to distinguish the uncontroverted facts herein from applicable precedent are unavailing. Judgement in favor of Defendants is appropriate under the circumstances presented in this dispute.

## DEFENDANTS' STATEMENT ON REPLY

### I. THERE ARE NO DISPUTED FACTS AS TO PLAINTIFFS' STATUS AS CONTRACTORS

#### A. Kinray did not control Routeholders.

Plaintiffs' contention that Kinray controlled the Routeholders and Helpers is unfounded, and without legal support. Each argument is addressed below.

Plaintiffs argue that because the IC Agreements provided for a multiyear term, and obligated Routeholders to service a specific route during such term, these facts established control over the Routeholders. While the IC Agreements' terms extended for multiple years, either party could cancel the IC Agreement on thirty days' notice without penalty. (Dkt. 325-1; Defendant's Statement of Material Facts "SOMF" at ¶ 17). Applicable case law establishes that the existence of a multi-year term is not indicative of employee status where the contractor has the right to cancel the agreement without cause. (Defendants' Memorandum of Law In Support of Their Motion for Summary Judgment ("MOL") at 13 (summarizing applicable case law regarding ability to terminate contract as controlling factor in analyzing the duration of the parties' relationship under the economic realities test)).

Plaintiffs contend that because the IC Agreement required that a Routeholder ensure their route was serviced, such obligation is also an indicator of employee status. Such argument is also unpersuasive because the Routeholders were not obligated to personally service the route. Rather, the Routeholder's commitment was to ensure that the deliveries were made. Such commitment is characteristic of a business obligation. The hallmark of an employment relationship is the requirement that the employee provide personal services to his employer. Employees are not free to send a substitute to work when they decide not to show up to work on a particular day. Here, Plaintiffs' argument that their ability to retain a helper to perform services is tantamount to working on a part-time basis is wholly unpersuasive.

Plaintiffs' reliance on *Brock v. Superior Care, Inc.*, 840 F.2d 1054 (2d Cir. 1988), in this regard is misplaced. Plaintiffs cite to *Superior Care's* holding regarding frequency of performance by an individual as a factor supporting the existence of an employment relationship under the FLSA. This is entirely distinct from the ability to delegate work and control how often (if at all) one self-performs under a contract. In *Superior Care,* the plaintiff nurse was not free to send a substitute in her stead and continue to receive payment for services rendered. She could not take on additional contracts, ultimately requiring her to engage assistance in order to service them. Here, Routeholders are not employees because they were free to assign another individual to meet their contractual obligations. Further, when Routeholders assigned a helper to a route, the Routeholder earned the fee and was paid by Kinray. The Routeholder then provided the helper with remuneration (or did not as in the case with several Bellwether Helpers whose Routeholders never paid them for their services). (SOMF at ¶¶ 254, 266). The facts presented in *Superior Care* are wholly inapposite.

2

Plaintiffs also argue that the terms of the IC Agreements demonstrate control indicative of an employment relationship. This argument also fails as a matter of law. In setting the terms of the IC Agreements Kinray did not establish the manner and means in which the terms of the IC Agreements were to be fulfilled.[1]  Rather, Routeholders accepted the terms of the business arrangement and determined how to maximize their profits—by managing their own expenses, by determining whether and when to self-perform some or all of the contracted routes, and by engaging helpers to join them while making deliveries or deliver for them. Routeholders had the ability to assess whether a particular route was a money maker by considering the flat fee and the per stop fee and the typical number of stops on the route along with the distance to be travelled, the time necessary to complete the route based on traffic patterns and other variable costs, such as fuel and tolls. If the Routeholder deemed a route unprofitable the IC Agreement could be cancelled with notice. All the Routeholders utilized their judgment in managing their contractual obligations and reaping a profit.

Bellwether Routeholder Coello **never provided services to Kinray for a single day**, and profited from his contracts by having helpers service the contracts, requiring the helpers to absorb the costs associated with servicing the routes, and paying the helpers less than what Kinray paid him. Bellwether Routeholder Fernandez managed his contractual obligations

---

[1] Plaintiffs argue in a footnote (Opp. at 11, n. 7) that they have submitted evidence regarding Routeholders' understanding of the IC Agreement (notwithstanding that it was in use for more than a decade in substantially the same form). (Defendants' Counterstatement of Material Facts ("CSOMF") at ¶ 140). As Judge Chen recently observed in rejecting similar assertions made on behalf of Uber drivers, "New York courts find that binding contracts are made when the user takes some action demonstrating that [she has] at least constructive knowledge of the terms of the agreement, from which knowledge a court can infer acceptance." *Kai Peng v. Uber Techs., Inc.*, 2017 U.S. Dist. LEXIS 25840, at *16 (E.D.N.Y. Feb. 23, 2017)("the Court is bound by clearly established law holding that failure to read a contract is not a defense to contract formation" despite allegation that drivers could not read English). This body of law applies to negate any impact of the Court's analysis of the IC Agreement – and its role in shaping the parties' relationship – of Plaintiffs' allegations regarding issues relating to their understanding of the IC Agreement.

differently: he retained five helpers to cover the seven routes he serviced.  Plaintiffs' reliance on *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339 (E.D.N.Y. Feb. 26, 2015) is unpersuasive.  The plaintiff in *Ethelberth* was employed by the defendant security company, paid an hourly wage and issued an IRS form W-2 for the first forty hours of work performed each week.  *Ethelberth*, 91 F. Supp. 3d at 347.  For hours worked beyond forty the *Ethelberth* plaintiff was paid on an hourly basis but issued an IRS form 1099.  *Id.* at 353.  The *Ethelberth* court found that plaintiff was properly designated as an employee and should have been paid overtime for all hours worked, not just those hours for which the plaintiff's pay was designated as wages.  *Id.* at 350–52.  The facts in *Ethelberth* bear no relation to those in the instant action.

Likewise, Plaintiffs' argument that *Saleem*, *Silk*, and *Browning* are not applicable because Routeholders were responsible for ensuring that their contracted for routes were serviced is unconvincing.[2]  While Routeholders' IC Agreement committed them to ensure that the route was serviced each day the route ran, Routeholders were free to decide who would service the route, and could choose not to personally do so.  The parallels between these cases and the instant matter are significant:  the dispatch operators established protocols for picking up passengers and setting the price of a cab ride.  Likewise, Kinray set up routes with designated customers and a price per delivery.  Whether the black car driver chose to provide services on a given day or time was up to the driver.  Likewise, whether the Routeholder self-performed a route or sent a helper to perform the service was up to the Routeholder.  An employee would not have this choice.  An employee

---

[2] As discussed at the pre-motion conference regarding the instant motion, Plaintiffs' assertion that *Thomas v. TXX Servs.*, 663 Fed. Appx. 86 (2d Cir. Oct. 25, 2016) applies to the instant matter and concerns a "nearly identical showing" by the plaintiffs there (who share counsel with Plaintiffs here) is incorrect. (Opp. at 1–6).  The record in *Thomas* consisted of a Rule 12 motion converted to summary judgment, and the decision addressed and reversed by the Second Circuit was reached without depositions or other discovery.  The facts and procedural posture are both completely distinct and distinguishable.  As Defendants' SOMF establishes, Plaintiffs here do not materially dispute the central facts (reiterated in this Reply as appropriate) regarding their business relationship with Kinray, most importantly their ability to control how their delivery business performed the deliveries at issue, and whether and how to grow that business.

4

would be expected to show up at an appointed place and time and would not be free to choose to send a substitute, and still be paid for the service rendered.  Thus, Plaintiff's contention that Kinray controlled the Routeholders' schedule such that they could not set their own days and hours of work is wholly misplaced.  Routeholders did in fact control their schedule and could decide when they would perform deliveries or send a helper in their stead.

Plaintiffs argue that the Court should consider how the Routeholders in fact managed their business, not what they could have done. (*See* Opposition at 9).  What Routeholders did is most telling:  Bellwether Routeholder Coello **never** performed during the limitations period and subcontracted his obligations to a variety of helpers.  Other Routeholders could have done the same, but most retained helpers to perform some of their contractual obligations, and on other occasions personally serviced their routes.  Not only did the Routeholders have the ability to completely subcontract all of the deliveries, but one Routeholder actually did so.  This is most telling.  The hallmark of an employment relationship is that the employee performs the work expected of the employer.  That critical fact is missing here.  The variation in the ways the Routeholders approached servicing their routes highlights the freedom they **all** possessed to do so.

Plaintiffs argue that Routeholders were not able to negotiate the flat fee and per delivery rates that were included in the IC Agreements.  This is incorrect, as certain of the Bellwether Routeholders testified that they negotiated rates with Kinray.  (SOMF at ¶¶ 29–31). However, whether Routeholders' negotiated the fees they were paid on routes is not a material fact precluding summary dismissal of their claims.  Even if Kinray did not permit Routeholders to negotiate the fees paid on particular routes, this is of no legal consequence.  In *Saleem, Silk*, and *Browning,* the Defendants all set the fee which the contractors would be paid. (MOL at 10–13 nn. 8–10).

5

Plaintiffs contend that by issuing instructions to Routeholders Kinray extended "extra-contractual" control over Plaintiffs. To the contrary, instructions cited by Plaintiffs are all consistent with and contemplated by the IC Agreements. Plaintiffs point to memos regarding the care and maintenance of vehicles, prohibitions on making non-delivery stops while on their routes, requirements to wear Kinray IDs while in the warehouse, directions to call Kinray for instructions if a pharmacy were closed at time of delivery, submissions of complete manifests, the handling of invoices and checks, and the manner of making returns to Kinray. (Opp. at 20). All of these directions are recitations of provisions of the IC Agreements. (*See* Ekelman Aff., Exs. AG–AO, CC at ¶¶ 1.b–1.g). Similarly, the requirements that Routeholders and their helpers possess a cell phone, and for deliveries to be made expeditiously are explicitly provided for in the IC Agreements. CSOMF at ¶ 213. Additionally, the IC Agreements require all Contractors to "obtain and maintain at all times while this Agreement is in effect, all licenses, permits and the like necessary for the performance of Contractor's obligations pursuant to this Agreement." (Ekelman Aff., Exs. AG–AO, CC at ¶ 5). This same provision also puts Contractors on notice that "if any changes occur with respect to such licenses, permits or insurance, Contractor shall immediately notify Kinray in writing." (*Id.*) The memos Plaintiffs' cite simply reiterate these contractual obligations; they are reminders in furtherance of the rules promulgated in the IC Agreements. Thus, Plaintiffs' arguments that the reminders issued to the Routeholders demonstrate "extra-contractual control" are without merit.

### B. Routeholders invested in their business enterprise and in fact had opportunity for profit or loss.

There are no disputed facts as to the Routeholders' ability to profit from their business relationship with Kinray. Likewise, the case law relied upon by Plaintiffs is readily distinguishable from the instant matter. Routeholders were able to generate profits by managing

their routes so as to maximize efficiencies, hiring helpers at rates from which they profited based on their contract with Kinray, and by growing their businesses. In this way, Routeholders managed their costs so as to yield a profit. (SOMF at ¶¶ 82–84, 102, 122).[3] Plaintiffs' reliance on *Gayle v. Harry's Nurses Registry, Inc.*, 594 Fed App'x 714 (2nd Cir. 2014) is misplaced. In *Gayle*, the plaintiffs worked on a per diem basis, were paid by the hour and could not subcontract shifts to other nurses.

Further, Routeholders made substantial financial investments in order to maintain their business relationship with Kinray. (SOMF at ¶¶ 72). Plaintiffs' passing effort to minimize the role of their tax returns in this analysis (Opp. at 26) must be rejected.[4] It is not the mere fact of Plaintiffs' "tax filing" as contractors upon which Defendants rely, but the substantial deductions (what the *Browning* court referred to as "significant tax benefits" in discussing this issue) reflecting operation of a business those returns reflect. (SOMF at ¶¶ 112, 126, 128, 135, 142, 160–61, 166, 169, 180, 190–91, 193, 195, 223, 230, 236, 248–49, 262, 267, 274). *See Simpkins v. Dupage Hous. Auth. & DHA Mgmt.*, 2017 U.S. Dist. LEXIS 123598 (N.D. Ill. Aug. 1, 2017)(individual providing "carpentry, maintenance, and handyman" services to housing authority was properly classified as contractor, and specifically rejecting Plaintiff's effort to minimize the operation of a business reflected in his tax returns and taking of deductions) (*citing* 26 U.S.C. § 7206).

---

[3] Indeed, one non-party Routeholder operated a concern which generated over $500,000 per year in business with Kinray during the limitations period. (SOMF at ¶ 81).

[4] Plaintiffs rely on *Agerbrink v. Model Serv. LLC* to support their position of the "limited relevance" of a worker's tax classification to the independent contractor analysis. This reliance is unconvincing. The procedural differences between *Agerbrink* and the present case are vast and detract from any weight Plaintiffs place on the holding. Notably, the *Agerbrink* parties were in the midst of discovery and before the Court was defendants' motion to compel production of plaintiff's tax returns. *Agerbrink v. Model Serv. LLC*, 2017 U.S. Dist. LEXIS 33249 (S.D.N.Y. Mar. 8, 2017). The Court reviewed the motion to compel using a two pronged test, which requires (i) the Court find the tax returns to be relevant and (ii) that there is a compelling need for the returns because the information is not readily available from another source. *Agerbrink*, 2017 U.S. Dist. Lexis at *15. Defendants met the first requirement of relevance by noting that the content of plaintiff's tax returns can demonstrate the absence of control by defendants. *Id.* at *19. However, because alternate means of finding equivalent information were available to defendants through interrogatories or depositions, the Court did not compel the production of the returns. *Id.* These unquestionable procedural differences erase any meaningful reliance Plaintiffs here place on the *Agerbrink* holding.

While the value of the Kinray operation far exceeds the Routeholders' individual investments, this is not an appropriate comparison.[5] Kinray's business is not a delivery service—Kinray is a wholesale pharmacy distributor. Its business model is to secure franchises to purchase and deliver pharmaceuticals and resell these products. (SOMF at ¶¶ 9–13). Thus, Plaintiffs' argument that the value of the entire Kinray enterprise should be considered in determining the amount of the investment in the delivery portion of the business is nonsensical. Kinray's investment in the hundreds of employees at its facility is necessary to support its wholesale pharmacy business, not a delivery business. In fact, as Kinray has not directly engaged any delivery service since 2015, Kinray's current investment in a delivery operation is presently zero.

### C. Routeholders Were Able to Select, Pay, Replace, and Control Their Helpers Without Input From Kinray.

Plaintiffs' claim that Defendants exerted extra-contractual control over the selection, approval, payment, and replacement of Helpers is wholly contradicted by the evidence. The uncontroverted facts are that Routeholders selected helpers, assigned their routes, decided whether to pay them and how much, and whether to provide the helpers with vehicles and to reimburse the helpers for their expenses. (SOMF at ¶¶ 82, 83, 254, 266, 70, 87, 104, 88, 91, 92, 95, 179). Further, the cases cited by Plaintiffs do not support their position. First, in *Ruiz v. Affinity Logistics Corp.*, 754 F.3d 1093 (9th Cir. 2014), the plaintiffs' claims were asserted under California state law only, not the FLSA or the NYLL and should thus be disregarded. *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1317 (11th Cir. 2013), also relied upon Plaintiffs, is inapposite. In *Scantland,* while the plaintiffs' independent contractor agreement permitted the

---

[5] The flaws in this logic and use of this comparison to assess the contractor's investment are obvious: under Plaintiffs' formulation, a large corporation never could enter into an arrangement where a contractor had *bona fide* investment, merely by dint of its size. *Saleem v. Corporate Transportation Group, Ltd., et al.*, 2017 U.S. App. LEXIS 6305, at *21–24 (2d Cir. 2017) (analyzing investment issue without reference to relative investment).

8

hiring of helpers, such right was illusory because the helpers had to contract directly with the defendant, not with the contract-holder. Here, Kinray had no direct relationship with helpers hired by Routeholders. Kinray did not pay the helpers or assign routes to the helpers. This was the responsibility of the Routeholders. Indeed, the undisputed facts establish that Helpers' compensation varied significantly as some Bellwether Helpers received no compensation while others were paid a daily fee or a weekly fee. (MOL at 24).

*Artola v. MRC Express, Inc.*, 2015 U.S. Dist. LEXIS 130183 (S.D. Fla. Sept. 25, 2015), another out-of-Circuit case cited by Plaintiffs, also is not binding and irrelevant, as the sole helper discussed in that case alleged that she was controlled by a third party. *Id*. at *17–18. Here, the record is clear that the Bellwether Routeholders all could and did select numerous different helpers, with whom they entered into numerous different arrangements. There are no disputed facts as to the Bellwether Helpers, or the variety of ways Bellwether Routeholders engaged and relied upon helpers. If a Routeholder chose to engage a helper, it was entirely the Routeholder's choice. The Bellwether Helpers' own account of their relationship with the Routeholders who engaged them is uncontroverted. The Bellwether Helpers were paid by Routeholders in accordance with the terms agreed upon with Routeholders (SOMF at ¶¶ 194, 200, 204, 210, 229, 239, 226, 241, 271, 272), they contacted the Routeholder—not Kinray when they had issues or could not perform services (SOMF at ¶¶ 201, 202), and Routeholders provided helpers with direction regarding the Helpers' deliveries (SOMF at ¶ 91). Plaintiffs' argument that Kinray controlled the Helpers is directly contrary to the record evidence and should be rejected.

**D.     Routeholders and Helpers Clearly Are Independent Contractors Under the New York Labor Law's Distinct Test**

Plaintiffs' sole argument as to the NYLL is one district court's observation that "there is general support for giving FLSA and the New York Labor Law consistent interpretations." Opp. at 28 *citing Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901 (S.D.N.Y. Sept. 10, 2013)(case addressing contractor status of exotic dancers). While some provisions of the NYLL are patterned after the FLSA, most notably the exemptions from overtime where New York's regulations expressly incorporate certain provisions of the FLSA,[6] the case law addressing independent contractor issues makes clear that the tests are distinct. *See Browning v. CEVA Freight, LLC*, 885 F. Supp. 2d 590, 598–99 (E.D.N.Y. 2012) (distinct discussions of economic realities test and New York Labor Law test under New York Court of Appeals decision in *Bynog*); *Velu v. Velocity Express, Inc.*, 666 F. Supp. 2d 300, 305–07 (E.D.N.Y. 2009). Routeholder Plaintiffs do not dispute that they: 1) worked at their own convenience and set their own schedules; 2) did not receive fringe benefits from Kinray and were not on its payroll and 3) were free to engage in other employment. (MOL at 25). These undisputed facts control the NYLL analysis under the test laid out by the New York Court of Appeals, and summary judgment must be granted as to Plaintiffs' NYLL claims.

**E.     Plaintiffs Do Not Dispute That Their Labor Law Section 193 and 195 Claims Must Be Dismissed**

Plaintiffs do not dispute that they cannot make a claim for unlawful deductions under New York Labor Law 193 or for violation of the notice provision of New York Labor Law 195. (MOL at 26 n. 19). These claims must be deemed abandoned, and summary judgment granted.

---

[6] *See* 12 N.Y.C.R.R. § 142-2.2.

10

## II. PLAINTIFFS FAIL TO CONTEST DEFENDANTS' ASSERTION OF THE LOCAL DRIVER EXEMPTION UNDER 29 U.S.C. § 213(B)(11).

Plaintiffs argue that the local driver exemption does not apply to Plaintiffs because, they assert, there has been no finding by the Secretary of Labor that the pay plan at issue "has the general purpose and effect of reducing hours worked by such employees to, or below, the maximum [non-overtime] workweek" under the FLSA. (Opp. at 28). However, there has been a finding that a substantially identical pay plan does meet the statutory requirement. (MOL at 26–27) (citing USDOL materials regarding approved pay plan). There is no dispute Plaintiffs were local drivers. While Plaintiffs' opposition implies that the Supreme Court case they cite, *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388 (U.S. Feb. 23, 1960), pertains to the local driver exemption, it does not. The language they cite is from a case addressing a since-repealed complete exemption from FLSA **coverage** for retail or service establishments, not an exemption for specific workers. The only applicable authority at issue is the Department of Labor opinion submitted by Defendants.

## III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO LIQUIDATED DAMAGES AND THE FLSA STATUTE OF LIMITATIONS IS PROPERLY BEFORE THE COURT.

Plaintiffs' contention that a discovery dispute exists which precludes summary disposition of Defendants' affirmative defenses is incorrect. First and foremost, Plaintiffs failed to raise this argument in their response to Defendants' pre-motion letter (Dkt. 325) or at the pre-motion conference, even though their response addressed the issue of good faith. (Dkt. 338). Nor did Plaintiffs pursue this purported discovery dispute prior to the close of Bellwether discovery by bringing it to the attention of the Court, as they did with respect to numerous other issues where they believed further discovery was warranted. (Dkt. 317, 329, 332). Furthermore, Defendants responded to Plaintiffs' discovery requests and produced documentation regarding the tax audits,

11

prior litigation and legal challenges to the routeholders' designation as independent contractors upon which they rely. Plaintiffs deposed Kinray's former owner in July 2014 (Ekelman Aff., Ex. H) who testified regarding counsel's drafting of the IC Agreement (SOMF at ¶ 38), and its former chief financial officer in March 2015 (Ekelman Aff., Ex. I), who testified regarding the tax audit. (SOMF at ¶ 97). Thus, Plaintiffs did in fact have the opportunity to and did obtain the discovery relevant to Defendants' defenses during the three-plus years this litigation has been pending leading up to the instant summary judgment process. Summary disposition of Defendants' affirmative defense as to liquidated damages, and as to Plaintiffs' failure to meet their burden with respect to willfulness, should be granted in Defendants' favor.

Plaintiffs' argument also fails because they failed to comply with Fed. R. Civ. P. 56(d) in that Plaintiffs did not submit an affidavit explaining specifically what facts are to be sought during discovery; how those facts reasonably are expected to create a genuine issue of material fact; what efforts the affiant made to obtain these facts without discovery; and, why such efforts were unsuccessful. *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir. 1985).

## CONCLUSION

Plaintiffs' opposition attempts to rewrite the economic realities test by pointing to realities of the delivery business – in particular, the timely delivery of pharmaceuticals, including controlled substances – as evidence of employer-style control. It is not such evidence. Stripped of that, Plaintiffs' position is that no one providing (again, delegable) services to a business is "independent." This is a bridge too far, and not the law. Routeholders were bona fide independent contractors who provided services under the IC Agreement; Helpers were individuals retained by

those Routeholders to assist them in the manner they mutually agreed upon. Neither were employees. Summary judgment must be granted, and this case dismissed.

Dated: New York, New York
August 15, 2017

                              Respectfully submitted,

                              JACKSON LEWIS P.C.
                              *ATTORNEYS FOR DEFENDANTS*
                              666 Third Avenue, 29th Floor
                              New York, New York 10017
                              (212) 545-4000

By:   *s/Felice B. Ekelman*
        FELICE B. EKELMAN, ESQ.
        NOEL P. TRIPP, ESQ.
        LAURA M. BEDSON, ESQ.

## CERTIFICATE OF SERVICE

      I hereby certify that on August 15, 2017, the enclosed DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR JUDGMENT was electronically filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, the Eastern District's Local Rules, and the Eastern District's Rules on Electronic Service, upon the following parties and participants:

D. MAIMON KIRSCHENBAUM
JOSEF NUSSBAUM
LUCAS BUZZARD
JOSEPH & KIRSCHENBAUM LLP
*ATTORNEYS FOR PLAINTIFFS*
32 Broadway #601
New York, NY 10004

                *s/ Noel P. Tripp*
                NOEL P. TRIPP, ESQ.

4825-8182-8173, v. 1