# jackson|lewis.

Representing Management Exclusively in Workplace Law and Related Litigation

Jackson Lewis P.C.
58 South Service Road
Suite 250
Melville, New York 11747
Tel 631 247-0404
Fax 631 247-0417
www.jacksonlewis.com

| | | | |
|---|---|---|---|
| ALBANY, NY | GREENVILLE, SC | MONMOUTH COUNTY, NJ | RALEIGH, NC |
| ALBUQUERQUE, NM | HARTFORD, CT | MORRISTOWN, NJ | RAPID CITY, SD |
| ATLANTA, GA | HONOLULU, HI* | NEW ORLEANS, LA | RICHMOND, VA |
| AUSTIN, TX | HOUSTON, TX | NEW YORK, NY | SACRAMENTO, CA |
| BALTIMORE, MD | INDIANAPOLIS, IN | NORFOLK, VA | SALT LAKE CITY, UT |
| BIRMINGHAM, AL | JACKSONVILLE, FL | OMAHA, NE | SAN DIEGO, CA |
| BOSTON, MA | KANSAS CITY REGION | ORANGE COUNTY, CA | SAN FRANCISCO, CA |
| CHICAGO, IL | LAS VEGAS, NV | ORLANDO, FL | SAN JUAN, PR |
| CINCINNATI, OH | LONG ISLAND, NY | PHILADELPHIA, PA | SEATTLE, WA |
| CLEVELAND, OH | LOS ANGELES, CA | PHOENIX, AZ | ST. LOUIS, MO |
| DALLAS, TX | MADISON, WI | PITTSBURGH, PA | TAMPA, FL |
| DAYTON, OH | MEMPHIS, TN | PORTLAND, OR | WASHINGTON, DC REGION |
| DENVER, CO | MIAMI, FL | PORTSMOUTH, NH | WHITE PLAINS, NY |
| DETROIT, MI | MILWAUKEE, WI | PROVIDENCE, RI | |
| GRAND RAPIDS, MI | MINNEAPOLIS, MN | | |

*through an affiliation with Jackson Lewis P.C., a Law Corporation

May 30, 2018

**VIA ECF**

Hon. LaShann DeArcy Hall
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

          Re: *Freddy Fernandez v. Kinray, Inc.*
             Civil Action No.: 13-CV-4938

Dear Judge DeArcy Hall:

  Pursuant to the Court's May 1, 2018 Minute Entry and Order (the "Minute Order"), the parties submit this joint letter outlining their separate proposals as to how the trial in this action should proceed as directed by the Court during the conference held on April 27, 2018. Counsel for the parties conferred by telephone on May 7, 22 and 23 2018, but were not able to reach agreement as to a joint proposal.

## I.  PLAINTIFFS' PROPOSAL

### A. Relevant Procedural History and Background

  This case was filed almost five years ago. In the lawsuit, Plaintiffs, a group of 118 drivers who delivered merchandise for Defendants Kinray Inc. and Cardinal Health, Inc. ("Kinray" or "Defendants"), allege that Defendants misclassified them as independent contractors rather than employees and in turn failed to pay them overtime wages in accordance with the governing statutes. At the outset of the lawsuit, the Parties bifurcated discovery between liability and damages. With respect to liability issues, Defendants completed full paper discovery of all 118 Plaintiffs and deposed 25 of them. The Parties have not conducted full damages discovery.

  In December 2015, Magistrate Judge Gold approved the Parties' "Stipulation Regarding Discovery and Dispositive Motion Practice" (the "Stipulation"), in which the Parties agreed to select nineteen "Bellwether" Plaintiffs for the purpose of streamlining summary judgment practice as to the overarching liability question in this case: whether Plaintiffs were properly

**jackson lewis.**

Hon. DeArcy Hall
Eastern District of New York
May 30, 2018
Page 2

classified as employees or independent contractors under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). (*See* Dkt. No. 285.) The Bellwether Plaintiffs included nine (9) individuals who were parties to Independent Contractor Agreements to provide delivery services to Kinray ("Routeholders") and ten (10) individuals who were not parties to Independent Contractor Agreements with Kinray but who also performed delivery services for the Company ("Helpers"). In the Stipulation, the Parties also agreed that, in the event the Court denied Defendants' motion for summary judgment, all 118 Plaintiffs' claims would continue in the lawsuit and, irrespective of whether or not the action is certified as a collective, Defendants would not move to sever any Plaintiff's claims.

In March 2018, the Court denied Defendants' motion for summary judgment. At a Status Conference on April 27, 2018, Defendants informed the Court that they intended to file a motion to oppose Court certification of a collective Action. Plaintiffs indicated that we would not oppose any such motion and were prepared to prosecute all 118 Plaintiffs' claims individually. The Parties agreed that an omnibus, blockbuster trial would not be feasible. Therefore, the Court Ordered the Parties to confer about a proposal that would allow some of the Plaintiffs to go forward to trial on October 3, 2018. The Court stated that, if the Parties could not reach a joint proposal, they should submit separate proposals.

### B. The Court Should Set Bellwether/Test Trials

Plaintiffs propose that the Court set four separate bellwether/test trials of two Routeholders and two Helpers beginning on October 3, 2018. Plaintiffs and Defendants would each select one Routeholder and one Helper from the 25 Plaintiffs who have already been deposed. The trials would be as to both the liability and damages issues, and the Parties would meet and confer as to what additional damages related discovery was necessary for the four Plaintiffs prior to trial. As set forth below, Plaintiffs' proposal is consistent with that of many trial courts throughout the country faced with multi-plaintiff actions brought as part of one lawsuit.

Federal Rule of Civil Procedure Rule 42(b) provides, in pertinent part, that a court "may order a separate trial of any claim . . . or any separate issue . . . always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution . . . ." Fed. R. Civ. P. 42(b). Pursuant to this rule, federal courts have the authority to conduct "bellwether" (also known as "test") trials. As explained by the Fifth Circuit in *In re Chevron U.S.A.*:

> The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one [...] If a representative group of claimants are tried to verdict, the results of such trials can be beneficial for litigants who desire to settle such claims by providing information on the value of the cases as reflected by the jury verdicts. Common issues or even general liability may also be resolved in a bellwether context in appropriate cases.

**jackson|lewis.**

109 F.3d 1016, 1019 (5th Cir. 1997); see also, e.g., *Cty. of Suffolk v. Amerada Hess Corp. (In re Methyl.)*, Nos. 1:00-1898, MDL 1358 (SAS), M21-88, 2007 U.S. Dist. LEXIS 45543 (S.D.N.Y. June 15, 2007) ("[E]very experienced litigator understands that there are often a handful of crucial issues on which the litigation primarily turns. A bellwether trial allows each party to present its best arguments on these issues for resolution by a trier of fact."); *City of N.Y. v. ExxonMobil Corp. (In re MTBE Prods. Liab. Litig.)*, No. 00 MDL 1898 (SAS), 2010 U.S. Dist. LEXIS 34471, at *18-19 (S.D.N.Y. Apr. 5, 2010).

To be sure, the term "Bellwether" used by the Parties at the summary judgment phase of this litigation does not have the same meaning in the context of the "bellwether" or "test" Plaintiffs propose here. Plaintiffs' current usage is the more commonly understood meaning of the term and simply refers to "test" trials where the juries' decisions in each trial has no preclusive effect on other plaintiffs and is only binding on the individuals' whose claims are tried. *Compare In re Chevron*, 109 F.3d 1016 (finding bellwether trials deficient where they had a preclusive effect on non-bellwether plaintiffs) *with Loudermilk Servs. v. Marathon Petroleum Co. LLC*, No. 04-0966, 2008 U.S. Dist. LEXIS 67866 (S.D. W. Va. Sep. 5, 2008) (distinguishing *In re Chevron* and ordering bellwether trial that did not decide issues for non-bellwethers); *see also, e.g., In re Methyl*, 2007 U.S. Dist. LEXIS 45543 (ordering bellwether trials of allegedly tainted wells where the preclusive effects were limited since "even if a jury finds one or more of the defendants liable with respect to any of the representative wells, that finding would not establish that the particular defendant is responsible for the alleged harm to other wells."); Edward F. Sherman, *Segmenting Aggregate Litigation: Initiatives and Impediments for Reshaping the Trial Process*, 25 Rev. Litig. 691, 697 (2006) ("Even without preclusive effect, [bellwether trials] offer an accurate picture of how different juries would view different cases across the spectrum of weak and strong cases [...].").

Scheduling Orders requiring bellwether trials have "achieved general acceptance by both bench and bar" because "the results of such trials can be beneficial for litigants who desire to settle such claims by providing information on the value of the cases as reflected by the jury verdicts." *In re Chevron*, 109 F.3d at 1019; *accord In re Methyl*, 2007 U.S. Dist. LEXIS 45543, at *6 (bellwether trial "often facilitates settlement of the remaining claims"). Here, Plaintiffs propose to conduct four separate bellwether trials to help advance the litigation and give both sides an opportunity to put litigation theories in practice and allow juries to evaluate the value of Plaintiffs' claims. *See, e.g., Flores et al, v. Velocity Express, LLC et al*, 12 Civ. 5790 (JST)(N.D.Cal.) at Dkt. No. 188 (scheduling 3 bellwether trials in an FLSA case involving 620 opt-ins alleging almost identical claims to those Plaintiffs allege here); *Davis v. Legend Energy Servs. LLC*, No. 6:13-CV-1, Minute Entry 10/7/2014 (S.D. Tex. Oct. 7, 2014) (setting 4 bellwether trials in an FLSA case involving 70 opt-in plaintiffs); *In re: Levaquin Prods. Liab. Litig.*, No. 08-1943 (JRT) (D. Minn. Mar. 8, 2011) (the "Court, upon recommendation by the parties, designated six individual plaintiffs . . . as possible bellwether" candidates and then allowed parties to take turns choosing cases to be tried); Case Management Order No. 9 at 2-3, *In re Fosamax Prods. Liab. Litig.*, No. 1:06-MD-1789(JFK) (S.D.N.Y Jan. 31, 2007) (providing that each party will pick 12 cases to fill the bellwether trial pool, with the Court picking an additional case; from that pool, plaintiffs, defendants and the court will each pick a trial case and the court "will randomly select the order in which each of the three cases will be tried"); Order

**jackson lewis.**

Hon. DeArcy Hall
Eastern District of New York
May 30, 2018
Page 4

Re: Bellwether Trial Selection at 2, *In re Prempro Prods. Liab. Litig.*, No. 4:03-CV-1507-WRW (E.D. Ark. Jun. 20, 2005) (court to select 15 cases at random for the bellwether trial pool and then the "parties must 'meet and confer'" to "together select" five cases that involve representative plaintiffs for trial).

As all 118 Plaintiffs' claims will eventually be tried, selecting four Bellwether Plaintiffs simply allows the Parties to begin that process. In other words, there is no doubt that a version of a bellwether trial will eventually be conducted because sooner or later some of the Plaintiffs' claims will be tried and some of them will have to go first. Selecting four individuals allows both Plaintiffs and Defendants to each select one Bellwether Plaintiff from the two categories of drivers, Routeholders and Helpers. It also ensures that the Parties will have all discovery completed for the limited group of individuals going to trial on October 3rd. Finally, it provides valuable information to the Parties in streamlining the other non-bellwether Plaintiffs' cases to trial. *See, e.g, Proceedings of the Tulane Law Review Symposium: The Problem of Multidistrict Litigation: Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2338 ("Bellwether trials thus assist in the maturation of any given dispute by providing an opportunity for coordinating counsel to organize the products of pretrial common discovery, evaluate the strengths and weaknesses of their arguments and evidence, and understand the risks and costs associated with the litigation."); Duke Law Ctr. for Judicial Studies, *Standards and Best Practices for Large and Mass-Tort MDLs*, 21 (2014) ("Bellwether trials may provide useful information to the parties regarding the likely outcome of other cases at trial, such as: (a) how well or poorly the parties' fact and expert witnesses perform in a trial setting; and (b) decisions on key legal issues and the admissibility of key evidence.").

To maximize the value of the bellwether process by increasing the Parties' ability to extrapolate from the outcome of the bellwether trials, each of the Bellwether trials should be tried to a separate jury. As set out succinctly in the Manual for Complex Litigation:

> Test cases should produce a sufficient number of representative verdicts and settlements to enable the parties and the court to determine the nature and strength of the claims, whether they can be fairly developed and litigated on a group basis' and what range of values the cases may have if resolution is attempted on a group basis. The more representative the test cases, the more reliable the information about similar cases will be.

Manual For Complex Litigation § 22.315 (4th ed. 2004). *See also, e.g., In re Rhone-Poulenc Rohrer*, 51 F.3d 1293, 1300 (suggesting, as an alternative to centralization of mature mass torts, "submitting an issue to multiple juries constituting in the aggregate a much larger and more diverse sample of decision-makers") (Posner J.); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2100, 2010 U.S. Dist. LEXIS 108107, at *4, *6-7 (S.D. Ill. Oct. 8, 2010) (it is "critical to a successful bellwether plan that an honest representative sampling of cases be achieved" because "[l]ittle credibility will be attached to this process, and it will be a waste of everyone's time and resources, if cases are selected which do not accurately reflect the run-of-the-mill case"); Alexandra D. Lahav, *Bellwether Trials*, 76 Geo. Wash. L. Rev. 576, 594 ("If only one jury hears a number of trials and makes decisions that are

Case 1:13-cv-04938-SMG Document 375 Filed 05/30/18 Page 5 of 10 PageID #: 8191

**jackson|lewis.**

Hon. DeArcy Hall
Eastern District of New York
May 30, 2018
Page 5

to be extrapolated to a larger population, then one set of jurors, rather than many sets over many years, will decide the fate of thousands of cases. Centralization means that there is a greater possibility for systemic bias to enter into the process than with the baseline of ordinary individual trials."); Eldon E. Fallon, et al., *Bellwether Trials In Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2343 (2008). ("the trial selection process should . . . illustrate the likelihood of success and measure of damages" of all cases in the litigation and "[a]ny trial-selection process that strays from this path will likely resolve only a few independent cases and have a limited global impact").

In our conversations with Defendants' counsel, it is our understanding that they intend to make a proposal that includes a much larger group of sample Plaintiffs for trial than that proposed by Plaintiffs. This approach will almost certainly lead to severe waste of judicial resources and the Parties' resources, especially as compared to Plaintiffs' proposal. First, Defendants' anticipated proposal would require the Parties to conduct voluminous discovery which could be more narrowly tailored after having gained the pinpointed insight and clarity that would be achieved through a small set of sample trials. Second, given the increased likelihood of a resolution based on the outcome of the sample trials, Defendants' anticipated proposal risks subjecting the Parties to additional voluminous discovery on individuals and claims that may ultimately be resolved without ever being tried. Finally, the sheer volume of a group the size of which we anticipate Defendants will propose will almost inevitably result in the need for significant extensions beyond the October 3rd trial date. All of these concerns would be obviated under Plaintiffs' proposal. Put simply, under all considerations, the most efficient method for navigating this litigation to resolution is to hold bellwether/test trials for a small group of Plaintiffs.[1]

### C. Plaintiffs Have Not Waived Their Jury Demand

In our meet and confer conversations relating to the trial schedule, Defendants' counsel—for the first time in this litigation—claimed that, despite including a jury demand in their original Complaint, Plaintiffs waived their right to a jury trial by omitting that statement from their amended pleadings. Plaintiffs have not been provided with and did not review Defendants' portion of this letter prior to its filing. However, if Defendants make this argument, they are plainly wrong as set for the below.

---

[1] In a similar vein, Plaintiffs anticipate that Defendants will seek to have the pool of proposed trial Plaintiffs enlarged to include Plaintiffs who have not yet completed liability discovery. This makes little sense. One of the goals of the bellwether process is to use the bellwether verdicts to narrow and focus the outstanding discovery. Here, the Parties have spent years completing liability discovery of 25 Plaintiffs and it only makes sense to select bellwether Plaintiffs from that pool. This follows the method of most cases multi-party cases where court's order bellwether trials. In those cases, the parties first create a pool of plaintiffs that can act as potential bellwethers, conduct discovery on those individuals only and then choose specific plaintiffs from the pool to act as plaintiffs at trial. *See, e.g., Flores*, 12 Civ. 5790 (JST)(N.D.Cal.) at Dkt. No. 188 (selecting 3 bellwether plaintiffs from a pool of 6 plaintiffs who were selected from the group of over 600 delivery driver plaintiffs bringing FLSA claims); *Proceedings of the Tulane Law Review Symposium: The Problem of Multidistrict Litigation: Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2338 (setting out options for selecting Plaintiffs for bellwether trials).

**jackson|lewis.**

Hon. DeArcy Hall
Eastern District of New York
May 30, 2018
Page 6

Federal Rule of Civil Procedure 38(d) provides that "[a] party waives a jury trial unless its demand is properly served and filed" and "[a] proper demand may be withdrawn only if the parties consent." Fed. R. Civ. P. 38(d). The Court "must indulge every reasonable presumption against waiver" of a jury trial. *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393, 57 S. Ct. 809, 81 L. Ed. 1177 (1937). Here, Plaintiffs never intended to waive their jury demand let alone reached a stipulation with Defendants to waive this demand. To the extent Defendants will argue that by not including the paragraph from the original Complaint in the Amended Complaints Plaintiffs waived the demand that is plainly not the law. *See, e.g., Auwood v. Harry Brandt Booking Office, Inc.*, 100 F.R.D. 804 (D. Conn. 1984) ("a party [is not] required to reassert, on pain of waiver, a previously stated jury demand in successive amendments [of pleadings], whether they add parties or not, so long as the same basic issues remain at the core of the litigation."), *accord P.C. Data Ctrs. of Pa., Inc. v. Fed. Express Corp.*, 113 F. Supp. 2d 709, 721 (M.D. Pa. 2000); *see also, e.g., Thomas v. Home Depot USA, Inc.*, 661 F. App'x 575, 577-78 (11th Cir. 2016) ("Nothing in the Federal Rules of Civil Procedure provides that a proper and complete jury demand can be withdrawn by a later amended complaint totally silent on the issue of a jury trial."); *Lee v. Retail Store Emple. Bldg. Corp.*, No. 15 Civ. 04768-LHK, 2017 U.S. Dist. LEXIS 206007, at *16-17 (N.D. Cal. Dec. 14, 2017) ("Plaintiffs are entitled to rely on their timely jury demands in the original complaint and FAC even though Plaintiffs did not explicitly demand a jury in their SAC.") Accordingly, Plaintiffs have every reason to rely on their jury demand which was never waived.

Defendants' anticipated argument is even more bizarre in light of the fact that the caption on Plaintiffs' Amended Complaint states in clear bold typeface "DEMAND FOR JURY TRIAL." (Dkt. No. 191-3 at p. 1). This statement alone constitutes unequivocal notice that Plaintiffs' never waived their jury demand. *See, e.g., Carvajal v. Pride Indus.*, No. 10 Civ. 2319-GPC (MDD), 2013 U.S. Dist. LEXIS 99354, at *5 (S.D. Cal. July 15, 2013) ("In the caption of the second amended complaint, Plaintiff writes "DEMAND FOR JURY TRIAL" in capital letters. This provides clear notice to the Court and the opposing party that Plaintiff sought a jury trial on the causes of action in the second amended complaint.").

## II. DEFENDANTS' PROPOSAL

### A. Overview and Proposed Timeline

Defendants propose the following timeline for pretrial procedures based on Your Honor's directives during the April 27, 2018 conference as to the anticipated trial start date of October 3, 2018, and in accordance with Section IV of Your Honor's Individual Practices:

June 27, 2018         Plaintiffs to file a Second Amended Complaint[2]

---

[2] As reflected in the ensuing Minute Order, at the April 27, 2018 conference Plaintiffs stipulated this action will not proceed as a collective action. Accordingly, each individual Plaintiff must separately prosecute and establish his or her claims in this action. (Dkt. 285 ¶ 11). This requires that each individual Plaintiff have an operative Complaint (as the putative FLSA opt-in Plaintiffs no longer are such) and plead sufficient facts to satisfy the applicable pleading standard for FLSA and NYLL overtime claims. *See Rosario v. First Student Mgmt. LLC*, 247 F. Supp. 3d 560, 567 (E.D. Pa. 2017) ("although every potential member of a FLSA collective action need not satisfy Rule 8's

**jackson|lewis.**

| | |
|---|---|
| July 1, 2018 | Deadline for serving expert disclosures, if any |
| July 6, 2018 | Defendants to designate up to ten additional Plaintiffs to be deposed in connection with selection process for first trial tranche |
| July 18, 2018 | Defendants' deadline to respond to the Second Amended Complaint |
| July 30, 2018 | Deadline for completing depositions of any additional Plaintiffs identified by July 6, 2018 deadline above |
| August 1, 2018 | Deadline for serving rebuttal expert disclosures, if any |
| August 15, 2018 | Parties to each designate ten Plaintiffs for inclusion in first trial tranche of twenty Plaintiffs (discussed in greater detail below) |
| August 24, 2018 | Deadline for completing depositions of any trial Plaintiffs not previously deposed and designated by Plaintiffs for inclusion in first trial tranche |
| August 28, 2018 | Deadline for filing motions *in limine* |
| August 30, 2018 | Close of expert discovery |
| September 5, 2018 | Deadline for filing (i) responses to motions *in limine*, (ii) pretrial memoranda if required by the Court and/or (iii) *voire dire* questions, jury instructions, and verdict sheets, if any |
| September 10, 2018 | Parties to submit joint pretrial order conforming to the requirements of Section IV.A of the Court's Individual Practices. |

### B. The Trial Is A Bench Trial

Plaintiffs waived their right to a jury trial in this action through the successful application to amend the Complaint. Plaintiffs included a jury demand within the body of their Complaint, filed on September 4, 2013. (Dkt. 1). On July 7, 2014, Plaintiffs moved for leave to amend their complaint. (Dkt. 191). As reflected in both the clean and redlined versions of their proposed First Amended Complaint, Plaintiffs deleted from the body of their proposed amended pleading the jury demand contained within the body of the Complaint. *Compare* Complaint ¶ 110 ("Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which they have a right to a jury trial"), *with* proposed First Amended Complaint, at 49 (Dkt. 191-2), *and* First Amended Complaint (Dkt. 191-3). The amended pleading expressly struck the jury demand. (Dkt. 191-2, 50). By Memorandum and Order dated December 30, 2014, Magistrate Judge Gold granted Plaintiffs' motion for leave to amend. (Dkt. 221). Thus, as of December 30,

---

pleading requirements, every named plaintiff who elects to file suit must"); *Kearse v. City of New York*, No. 17-CV-9982 (JMF), 2018 U.S. Dist. LEXIS 73257, at **3-4 (S.D.N.Y. May 1, 2018) ("Plaintiffs cite no authority for the proposition that, where claims are brought on behalf of multiple plaintiffs, it suffices to allege plausible claims as to some plaintiffs and, as to the other plaintiffs, merely to allege 'me too' in conclusory fashion"). The First Amended Complaint identifies only fifteen Plaintiffs by name, and contains no factual allegations whatsoever regarding any other Plaintiff who wishes to proceed in this action. (*See* Dkt. 191-3, ¶¶ 85-259). Thus, Plaintiffs must remedy these deficiencies in a Second Amended Complaint.

**jackson|lewis.**

Hon. DeArcy Hall
Eastern District of New York
May 30, 2018
Page 8

2014, the clean version of Plaintiffs' proposed First Amended Complaint dated July 7, 2014 (Dkt. 191-3) became the operative complaint in this action. Plaintiffs' intentional deletion of the jury demand from the body of the amended pleading is clear evidence that they waived their right to a jury trial. *See Barnes v. Alves*, No. 01-cv-6559 EAW, 2014 U.S. Dist. LEXIS 74180, at **8-9 (W.D.N.Y. May 30, 2014) (*citing Royal Am. Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1018 (2d Cir. 1989)) ("A waiver of a jury trial does not have to be formal and may be inferred by the conduct of the parties or counsel."); *Kahn v. GMC*, 865 F. Supp. 210, 212 (S.D.N.Y. 1994) ("A demand for a jury trial can be waived by the conduct of the parties in a variety of ways."). On January 13, 2015, Defendants served their respective Answers to the First Amended Complaint. (Dkts. 225, 226). Thus, Plaintiffs' time to serve a written demand pursuant to Federal Rule of Civil Procedure 38(b)(1) has long passed. Accordingly, this case should proceed as a bench trial.

### C. Scope of Issues For Trial[3]

#### 1. Liability Only

Defendants propose that the trial be limited to issues of liability (as specified below). To the extent that Defendants are found liable at trial, Defendants will work with Plaintiffs to pursue a negotiated stipulation as to damages for each individual Plaintiff to whom Defendants are found liable. If the parties are not able to so-stipulate, Defendants propose Court-annexed post-trial mediation for the sole purpose of resolving damages issues.

#### 2. "Degree of Control" Is The Only Element of Plaintiffs' Overtime Claims Remaining For Trial

The Court has already determined as a matter of law that two of the relevant "economic reality" factors weigh in favor of Plaintiffs, and two of the relevant factors weigh in favor of Defendants. In its Order of March 28, 2018 (Dkt. 363) denying Defendants' motion for summary judgment, the Court determined that as to four of the "economic reality" test factors, there are no material facts in dispute, and drew a legal conclusion from those facts. Specifically, as to (i) the workers' opportunity for profit or loss and their investment in the business, and (ii) the extent to which the work is an integral part of the employer's business, the Court ruled as a matter of law that these factors weigh against a finding that Plaintiffs were Kinray employees. Dkt. 363, 8-9. As to (iii) the degree of skill and independent initiative required to perform the work, and (iv) the permanence or duration of the working relationship, the Court ruled as a matter of law that these factors weigh in favor of finding that Plaintiffs were Kinray employees. Dkt. 363, 9-10.

These rulings constitute a decision on an issue of law. *See Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 140 n.19; *Cary Oil Co. v. MG Refining & Marketing, Inc.*, 257 F. Supp. 2d 751, 765 (S.D.N.Y. 2003) (rulings made "while explaining [the Court's] reasons for denying

---

[3] Defendants' proposal herein is limited to Plaintiffs' wage-and-hour claims. With regard to Plaintiff Fernandez's individual claim of retaliation, Defendants propose that parties confer further, as necessary, to address trial of this claim.

**jackson|lewis.**

Hon. DeArcy Hall
Eastern District of New York
May 30, 2018
Page 9

Defendants' motion for summary judgment . . . renders such language necessary to the holding"); *see generally Grenawalt v. AT&T Mobility, LLC,* 642 Fed. Appx. 36 (2d Cir. 2016) (acknowledging that district court may, in proper case, determine whether individual factors weigh against joint employment as a matter of law on summary judgment).

Accordingly, the Court's rulings are binding as "law of the case" and limit the scope of issues remaining to be tried to those issues where the Court has identified a disputed issue of material fact. *See Grocery Haulers, Inc. v. C & S Wholesale Grocers, Inc.,* No. 11 Civ. 3130, 2013 U.S. Dist. LEXIS 12094, at *6 (S.D.N.Y. Jan. 29, 2013) (quoting *Aramony v. United Way of Am.,* 254 F.3df 403, 410 (2d Cir. 2001)) (affording "law of the case status" to prior rulings based "on uncontroversial principles of contract construction as applied to a factual record that was, in the pertinent parts, undisputed."); *Disability Advocates, Inc. v. Paterson,* No. 03-CV-3209, 2009 U.S. Dist. LEXIS 39201, at *6 (E.D.N.Y. May 8, 2009) (emphasizing that "issues that [the Court] resolved [in its prior decisions] are law of the case" and that the "trial, occurring nearly six years after [plaintiff] filed this action, will resolve disputed issues of fact; it will not be an opportunity for Defendants to present 'additional or different evidence than was before the Court on the motion for summary judgment' on issues this court already decided").

### D. Individual Plaintiffs To Be Grouped Into Tranches For Trial

Defendants propose that on or before August 15, 2018, each party select ten Plaintiffs, twenty in total, who will comprise the first tranche for trial.[4] Defendants further propose that the parties' selections not be limited to the "Bellwether" Plaintiffs selected pursuant to the December 15, 2015 Stipulation Regarding Discovery and Dispositive Motion Practice for summary judgment purposes. (Dkt. 285). Defendants contemplate that each Plaintiff within the first tranche (and additional tranches, if any) would proceed individually on his or her case in chief, and that Defendants would present their case in chief once, after all of the first tranche Plaintiffs have been fully heard on their claims.[5]

Given that Plaintiffs are asserting individual claims, the outcome at trial as to any individual Plaintiff within the first tranche will not apply to or be binding on any other individual Plaintiff, regardless of tranche designation. Nonetheless, Defendants anticipate that based on the outcome at trial as to the first tranche, the parties will at best, be able to resolve this action, or, at worst, be able to streamline trial practice as to all of the remaining Plaintiffs.

### E. Additional Pre-Trial Discovery

To date, Defendants have only deposed twenty three of the one hundred and nineteen Plaintiffs in this action. To aid in the process of selecting the "first tranche" Plaintiffs,

---

[4] Defendants' preference is for the first tranche to include twenty Plaintiffs. To the extent the Court declines to adopt Defendants' initial proposal, Defendants respectfully request the opportunity to submit an alternative proposal with fewer Plaintiffs in the first tranche, subject to further guidance from the Court.

[5] With regard to trial of additional tranches, if any, Defendants contemplate proceeding in substantially the same manner, but with Defendants' witnesses reading their prior trial testimony into the record in lieu of testifying in person.

**jackson|lewis.**

Defendants propose deposing up to ten additional Plaintiffs. As set forth on the proposed timeline above, Defendants contemplate that they will designate the deponents on or before July 6, 2018, and complete the depositions by July 30, 2018. Should Plaintiffs designate additional Plaintiffs for inclusion in the first trial tranche, Defendants also propose that they be afforded the opportunity to depose any individuals not previously deposed.

These additional depositions are appropriate because all potential deponents are parties to this action who must participate in discovery, and necessary to (i) remedy the Plaintiffs' failure to accurately and completely respond to Defendants' written discovery requests and to further develop the factual record through sworn testimony which reflects each deponent's true recollection, and (ii) reconcile inconsistencies between Plaintiffs' previous responses to written discovery and the allegations in the First Amended Complaint. *See generally* Dkt. 203. Without the ability prior to trial to challenge individual Plaintiff's contentions through questioning at a deposition, Defendants' ability to defend this action will be prejudiced. If any Plaintiff fails to appear for his or her deposition noticed in connection with pre-trial discovery, Defendants propose that such Plaintiff's claims be dismissed with prejudice, consistent with the prior orders in this action. (*See* Dkts. 251, 257 (granted May 14, 2015), 268 (granted July 15, 2015)).

Respectfully submitted,

| | |
|---|---|
| JOSEPH & KIRSCHENBAUM LLP | JACKSON LEWIS P.C. |
| By: ___/s/___ | By: ___/s/___ |
| D. Maimon Kirschenbaum | Felice B. Ekelman |
| 32 Broadway, Suite 601 | 58 S. Service Road, Suite 250 |
| New York, New York 10004 | Melville, New York 11747 |
| Tel.: (212) 688-5640 | Tel.: (631) 247-0404 |
| *Attorneys for Plaintiffs* | *Attorneys for Defendants* |

4845-1770-1222, v. 4